413 So.2d 1325 (1982)
Elmo E. MELDER, Plaintiff-Appellee,
v.
CENTURY TELEPHONE ENTERPRISES, INC., et al., Defendant-Appellant.
No. 8731.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
On Rehearing April 30, 1982.
*1326 Jeansonne, Briney & Lewis, Owen M. Goudelocke, Lafayette, for defendant-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Kathleen Overcash, Lafayette, for defendant-appellant.
Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, SWIFT and LABORDE, JJ.
SWIFT, Judge.
This is a worker's compensation suit to recover benefits for total permanent disability and for penalties and attorney's fees. From a judgment in favor of the plaintiff, Elmo E. Melder, the defendants, Century Telephone Enterprises, Inc. (Century), and its insurer, Hartford Accident and Indemnity Company (Hartford), have appealed.
At the time of trial plaintiff was 59 years of age with an eleventh grade education. He had been engaged in hard physical labor all of his working life. For about the past 27 years Mr. Melder has been employed by the three telephone companies which successively owned the Ville Platte and Evangeline Parish facilities. He initially was employed as a cable splicer's helper. Subsequently, he acquired a position as a telephone installer-repairman and two or three years ago he was promoted by Century to the position of a combination man. As an installer-repairman and also a combination man plaintiff was required to crawl under houses, go into attics and climb ladders and telephone poles. He often climbed from four to 30 poles per day and had to carry between 40 and 50 pounds of equipment attached to his waist during the performance of these duties. Mr. Melder is a relatively short man of slight body build. His last day of employment with Century was November 14, 1980. At this time his wages were $374 per week.
The plaintiff testified that initially he hurt his back in a vehicular collision on July 2, 1975, while engaged in his employment. He returned to work after a couple of days. Before this accident Melder had experienced no problems with his back. Over the next five years his back pain became progressively worse, depending on how much climbing he was required to do. After two operations unrelated to his job in the summer of 1980, the plaintiff returned to work on September 29, 1980. Because of continued pain in his back, he decided to take his earned vacation time on November 14, 1980, and see a physician about the problem. After the physician told him that he could no longer perform the duties of his job, the *1327 plaintiff discussed the matter with his supervisor and was told to apply for disability benefits under a group insurance policy covering Century's employees. He did so, but the company refused and placed him on regular retirement under a company stock plan. Plaintiff received his last pay check on February 16, 1981, and has never received any benefits for his disability.
Dr. Gordon Soileau testified he had been plaintiff's family physician for 25 years and that Melder had suffered numerous problems with his back. In 1971 he was treated for fibromyositis of the lower lumbar area and a lumbar muscle spasm. In 1974 the plaintiff's x rays revealed a vertebral condition called "Schmorl's nodes," a protusion of the disc into the body of an adjacent vertabrae. Once in 1975 after the auto accident, twice in 1976 and on an examination in 1978 the plaintiff was diagnosed as having lumbar muscle strains. Except for the 1975 accident, Mr. Melder never mentioned any injury as the basis of his back complaints. This doctor thought that the repeated trauma involved in his employment could have been an eroding factor in the plaintiff's condition.
Dr. James R. Lafleur, an orthopedic surgeon, saw the plaintiff in October, November and December of 1978 and concluded that he was suffering from a chronic lumbosacral myofascial strain with L4-5 left facet arthrosis. He found no evidence to indicate that plaintiff was suffering from a herniated disc. The doctor prescribed conservative treatment and discharged Melder as "improved" in December. He could not say whether or not the 1975 collision caused the conditions which he treated.
Dr. J. Frazer Garr, an orthopedic surgeon, testified that he examined the plaintiff on July 3, 1975, following his accident and diagnosed his condition as a strain of the left hip region. There was no evidence of spinal cord compression or nerve root irritation. On November 21, 1980, he was seen again with complaints of increased pain. Several tests were made, including a myelogram which showed that plaintiff suffered from a herniated disc at L4-5 level. In this doctor's opinion the plaintiff had a 20% permanent impairment of the body as a whole and he was not fit for any moderate or strenuous type of work. He doubted that Melder could "perform any particular activities which would afford him gainful employment...." Dr. Garr testified that plaintiff's back trouble possibly started with the auto wreck in 1975, but he believed that the disabling disc condition resulted from the repeated traumas sustained by the plaintiff in his work.
The report of Dr. F. Lionel Mayer, an orthopedic surgeon who examined Melder on June 22, 1981, apparently at Century's request, states that the plaintiff has evidence of nerve root irritation on the left. However, this physician was unable to determine whether the plaintiff's back problem was a direct result of the accident in 1975 or of his occupation as a lineman or a combination of both. He would not advise that Melder return to work as a lineman involving climbing or heavy lifting, but he is able to do lighter work.
The defendants specify as error on this appeal the trial court's findings that: 1) The plaintiff suffered an accident within the intendment of the Louisiana workmen's compensation statutes; 2) The defendants were arbitrary, capricious and without probable cause in failing to pay the plaintiff compensation benefits; and 3) The plaintiff's weekly compensation rate was $166 and he was entitled to such benefits commencing on November 14, 1980.
Our workmen's compensation law provides benefits for an employee who is disabled because of an on-the-job accident. LSA-R.S. 23:1031. Section 1021(1) of Title 23 contains the following definition:
"(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
Although the statutory definition of "accident" is rather restrictive, our jurisprudence has given an extremely broad interpretation to that word, holding that "when the performance of the usual and customary *1328 duties of a workman cause or contribute to a physical breakdown the statutory requirements for an accidental injury are present." Fergusen v. HDE, Inc., 270 So.2d 867 (La.1972). See also Harper v. Kast Metals Corp., 397 So.2d 529 (La.App. 2 Cir. 1981), writ denied 401 So.2d 988 (La.1981); Miller v. Olinkraft, Inc., 395 So.2d 905 (La. App. 2 Cir. 1981); and Malone and Johnson, Workers' Compensation, 2d Ed. Sections 211-217 (1980), Louisiana Civil Law Treatise.
Several cases which dealt with similar factual situations as the present case are Chism v. Kaiser Aluminum and Chemical Corporation, 332 So.2d 784 (La.1976), and Lemoine v. Marksville Industries, Inc., 391 So.2d 528 (La.App. 3 Cir. 1980), writ denied 396 So.2d 1325 (La.1981). In Chism the plaintiff performed heavy manual labor at the defendant's plant for several years. He stepped in a hole and sought medical treatment for back pain at the company first-aid station. Within seven months after this incident plaintiff also sought medical treatment twice for back pain suffered at work. Eventually the pain became so severe that he was hospitalized. The final diagnosis was a herniated disc. The Supreme Court held:
"It is true that the record does not establish which of the several occupational incidents finally ruptured the disc. We find that it does establish, however, that one or more of the accidents on the job aggravated plaintiff's back condition to the extent that he became disabled. Thus, under the jurisprudence, the plaintiff has discharged his burden of proof."
In Lemoine the plaintiff was employed as a pants presser. She would press the pants, turn to the left and hang them on a rack. This procedure was performed approximately 960 times a day. After about a year on the job she began experiencing pains in the lower part of her back which became progressively worse. Her condition was finally diagnosed as a herniated disc in the mid-back region. Following Chism, this court held:
"Although the evidence does not show what specific incident caused her first back pain, or which incident finally herniated the disc, the evidence clearly shows the numerous rapid twisting and turning movements required by her duties aggravated plaintiff's existing back condition, whatever its origin, to the extent that she finally became disabled. Clearly, the trial judge was not manifestly erroneous in his factual conclusion that plaintiff proved a job-related accident caused the herniated disc."
The Court of Appeal, Fourth Circuit, applied the same rule in Scanlan v. Bernard Lumber Co., Inc., 365 So.2d 39, (La.App. 4 Cir. 1978).
Considering the jurisprudence, it is clear that the plaintiff here has sustained his burden of proving that a series of work-related accidents caused his disabling injury. The evidence shows that the accident in July, 1975, caused his first back pain. However, it does not clearly show that this incident or any other single incident actually herniated his disc. The medical evidence and the plaintiff's testimony show that the climbing of poles and ladders, as well as plaintiff's other duties as an installer-repairman and combination man, aggravated his back condition to the extent that he finally became disabled. We agree with the trial judge's determination that the plaintiff proved his total and permanent disability is compensable.
The second issue raised by this appeal is whether Century was arbitrary, capricious and without probable cause in failing to pay the plaintiff workmen's compensation benefits. Alternatively, the defendant argues that the award of $4500 for attorneys' fees was excessive.
The trial court's conclusion that the failure to pay plaintiff's benefits was arbitrary, capricious and without probable cause is partially a factual determination and should not be disturbed on appeal in the absence of manifest error. Cullivan v. Fish Engineering & Const. Co., Inc., 354 So.2d 597 (La.App. 3 Cir. 1977), writ not considered, 355 So.2d 254 (La.1978).
*1329 In the present case the plaintiff testified that he stopped working on November 14, 1980. He discussed his condition with his superiors and on their advice requested disability retirement benefits from Century in December, 1980. The company placed him on regular retirement instead. Although he was paid his salary to February 16, 1981, the only explanation in the record for the payment thereof after he ceased working on November 14 is the plaintiff's testimony that this was for unused vacation time. He has never received any workmen's compensation or other benefits for his disability. Dr. Garr sent the employer medical reports of plaintiff's disability on December 9, 1980, and January 7, 1981. The medical testimony shows that the plaintiff was disabled as a result of cumulative job-related injuries and is entitled to worker's compensation benefits under the above authorities. The defendants sought no medical advice as to the cause of his disability until after suit was filed and offered no testimony as to why the compensation was never paid. The plaintiff testified that the company representative informed him that he was not considered disabled if he could get out of bed. Under these circumstances we cannot say that the trial court committed manifest error in awarding penalties and an attorney's fee. Lee v. National Tea Co., 378 So.2d 134 (La.App. 3 Cir. 1979).
The amount awarded as attorney's fees rests largely on the discretion of the trial court. Each case must be decided in the light of its own facts and circumstances, bearing in mind that the fee awarded must be reasonable. Crooks v. Southern Casualty Insurance Company, 337 So.2d 915 (La.App. 3 Cir. 1976).
In the instant case the trial was completed in one day and only two witnesses were called by the plaintiff. However, four depositions were taken, two of which were taken out of town. The depositions of the three physicians involved rather complex medical testimony. While the $4500 attorney's fee award appears high, we are unable to say that it is beyond the maximum limit of the trial judge's discretion. See Coulton v. Levitz Furniture Corporation, 391 So.2d 80 (La.App. 4 Cir. 1980).
The plaintiff is seeking an additional amount for his attorney's services on appeal. We conclude that $4500 adequately compensates plaintiff's counsel for the work performed both in the trial court and on appeal.
The defendants also assert that the trial court erred in its determination that the plaintiff's disability began on November 14, 1980. They contend he failed to establish just when this occurred and therefore is not entitled to compensation benefits. We disagree.
The compensation award should begin when the pain resulting from an accident becomes disabling. Hartsell v. Hooker Chemical Corporation, 288 So.2d 417 (La. App. 4 Cir. 1973), writ denied 292 So.2d 243 (La.1974). The testimony of the plaintiff reveals that his back was hurting him most of the time he was climbing and bending and more so during the two weeks he worked in November, 1980. So he then decided to use his vacation time to seek medical advice and treatment. After visiting Dr. Soileau he was referred to Dr. Garr who saw him on November 21, 1980. On January 7, 1981, the plaintiff's condition was diagnosed as a herniated disc and he was told not to resume his former duties. Considering this testimony, we cannot say that the trial court committed manifest error in determining that the plaintiff's disability began on November 14, 1980.
Lastly the defendants contend the rate of plaintiff's weekly compensation benefits is $163 instead of the $166 awarded by the trial court.
Counsel for the parties stipulated that if plaintiff is successful in this suit he is entitled to the maximum weekly compensation provided by law. They were to furnish this amount to the trial court later. However, the record does not reflect that this was done, nor does it contain any evidence as to the average weekly wage in all employment subject to the Louisiana Employment *1330 Security Law from which the maximum compensation for plaintiff's disability must be determined in this case. LSA-R.S. 23:1202.
In view of this insufficiency of the record, we will have to remand the case for determination by the trial court of the amount of the plaintiff's weekly compensation unless the parties can now agree what the maximum weekly compensation rate was in this state on November 14, 1980. If they can do so, then we will consider their stipulation on an application for rehearing filed by either party and render the appropriate decree.
For the reasons assigned, the judgment appealed from is affirmed, except as to the amount of the weekly compensation benefits awarded to the plaintiff, and the case is remanded to the district court for its reconsideration and determination of such sum unless the parties are able to agree as aforesaid. The costs of this appeal will await final judgment.
AFFIRMED IN PART AND REMANDED.
DOMENGEAUX, J., concurs and assigns reasons.
DOMENGEAUX, J., concurring.
I agree with the majority opinion and its result. I do not necessarily agree however, that the $4,500.00 attorney fee appears high, but in view of all aspects of this case, it is probably adequate for work performed both at trial and on appeal.

ON REHEARING
SWIFT, Judge.
Since our original decision was rendered both parties have stipulated that the maximum weekly compensation rate in Louisiana on November 14, 1980, was $163 per week. They have jointly applied for a rehearing limited to consideration of the stipulation. A rehearing has been granted solely for this purpose. Having considered the stipulation filed herein, we conclude that the rate of weekly compensation to which the plaintiff is entitled in this suit is $163. We therefore amend our original decision and decree.
For the reasons assigned, the judgment of the district court appealed from is amended so as to reduce the amount of weekly compensation benefits awarded therein to plaintiff from $166 to $163. As amended, the judgment is affirmed in all other respects. The costs of this appeal are assessed to the defendants-appellants.
AMENDED AND AFFIRMED.