424 So.2d 293 (1982)
Jimmy W. WHEAT
v.
FORD, BACON AND DAVIS CONSTRUCTION CORP., et al.
No. 82 CA 0105.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Rehearing Denied January 14, 1983.
Writs Denied March 4, 1983.
*294 Donald Fendlason, Bogalusa, for plaintiff.
Iddo Pittman, Jr., Hammond, for Ford, Bacon & Davis and Aetna Cas. and Sur. Co.
John W. Anthony & R. Bradley Lewis, Bogalusa, for defendant H.L. Richardson and Commercial Union Ins. Co.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
This is a workers' compensation suit in which plaintiff seeks compensation benefits for total disability from his former employers, Ford, Bacon & Davis Construction Corporation and H.L. Richardson d/b/a H & L Construction Company, and their insurers. At issue are the questions of whether plaintiff is disabled, either partially or totally, and if so, whether the disability resulted from a work-related accident with Ford, Bacon & Davis or H & L Construction Company or both.
The plaintiff is a thirty-four year old man who obtained a high school equivalency degree through the G.E.D. testing process. Plaintiff also attended Pearl River Junior College in Poplarville, Mississippi where he completed one year of training in welding and two years of training in auto mechanics. He subsequently used this training to make a living in the construction industry as a welder working out of New Orleans for Local 60, Plumbing and Steam Fitters Union. In October 1978 he was employed by Ford, Bacon & Davis as a pipe welder on a construction project at Crown Zellerbach Corporation in Bogalusa, Louisiana. On October 5, 1978 plaintiff hurt his back while he and a fellow employee were lifting a piece of pipe which weighed five or six *295 hundred pounds. The accident was reported to his foreman and an accident report was prepared. Though plaintiff did not immediately seek medical attention, the pain increased within the next day or two to the point where plaintiff was required to see his family physician, Dr. Rogelio Casama. Dr. Casama diagnosed the condition as a lumbosacral strain. Dr. Casama prescribed some muscle relaxers for plaintiff to take, and permitted him to return to work with instructions to "take it easy." Following his return to work, he was given light duties and his work was restricted. By November 1978 his movements were better, but he still sustained sharp pains upon bending and doing any heavy lifting. Near the end of 1978 the job was completed and plaintiff returned to the union hall to seek further employment.
Plaintiff's next job brought him back to the Bogalusa Crown Zellerbach plant where he was employed by Forbes Construction Company as a working foreman. This job was completed in approximately two weeks. Again, plaintiff found another job in the Bogalusa plant, this time with H & L Construction Company as a pipe welder. When he started this job, plaintiff was still having back pain, but it was somewhat better than it had been during the Ford, Bacon & Davis job. The job with H & L began on February 5, 1979, and plaintiff was required to cut large pieces of pipe and drag them out of a tank. Plaintiff testified he began the day without much pain, but by the end of the day he was hurting badly and could hardly bend over. Plaintiff told Mr. Richardson, his employer, of his previous back injury and told him he was going to see a doctor. He took off the following day to see a doctor, but was unable to get an appointment. The following day was the last day on the H & L job and plaintiff was given light duty.
When plaintiff finally reached Dr. Casama he was referred to Dr. Luis Matta, an orthopedic surgeon in Covington, Louisiana. Dr. Matta first saw plaintiff on February 8, 1979. His preliminary diagnosis was that plaintiff had a residual injury to the area of the supraspinal ligament at the level of the L4 interspace. Dr. Matta stated he felt this injury had resulted from the October 5, 1978 accident and was probably aggravated by the work plaintiff had performed on February 5, 1979 with H & L. Plaintiff again saw Dr. Matta on February 19, 1979. At this time, plaintiff was improving. His pain was no longer localized, but encompassed most of his lower back. On March 5, 1979 plaintiff visited Dr. Matta for a third time. His condition was still improving, though he was somewhat sore, had some restriction of motion in flexion, and had a mild spasm of the musculature in the lumbar area. On plaintiff's fourth visit to Dr. Matta on March 19, 1979, he was doing much better. He had no spasm and was exhibiting a full range of motion of the back. At that time, he was discharged by Dr. Matta, who felt there were no clinical findings on which to base a disability rating.
After the H & L job, plaintiff was off work approximately three and a half months. After reporting the pain he encountered on February 5, 1979 on the H & L job to Ford, Bacon & Davis, their insurer, Aetna Casualty and Surety Company, paid plaintiff six weeks of compensation benefits, including Dr. Matta's bills, until plaintiff was discharged by Dr. Matta in late March of 1979.
Plaintiff returned to work in May of 1979. This time he was able to obtain employment with Gaffney Construction Company in the Bogalusa paper mill, and he continued his job with Gaffney until the job was completed almost two years later. Plaintiff's job with Gaffney was originally in the capacity of a pipe welder, but after about two months he became a working foreman. Plaintiff testified he worked in pain with Gaffney in order to support his wife and son. He claimed the pain, which was now radiating to his right hip and leg, continued to increase to the point where he could no longer perform his household repairs nor could he ride his horses. The pain finally forced plaintiff to return to Dr. Matta in January of 1980, who scheduled a myelogram for plaintiff. The myelogram *296 was performed on February 14, 1980, and it revealed a herniated disc at the L4-L5 interspace on the left side. However, Dr. Matta did not recommend surgery; he told plaintiff to lift with his legs rather than his back, and to return if he began having symptoms again. Plaintiff returned to work out of economic necessity and continued his job as foreman with Gaffney until April 1981. At this time, Gaffney transferred him to Norco, Louisiana, where he was required to work as a pipe fitter. The bending, stooping, tool work, and the vehicular trip aggravated his condition to such an extent that he could no longer continue in this line of work, so he quit the Norco job after four days.
The trial judge found the plaintiff disabled to the extent he could no longer perform work as a pipe fitter or as a foreman for a pipe fitter's crew. However, the trial judge felt the "odd-lot" doctrine was inapplicable since he believed Mr. Wheat was an intelligent and industrious individual who, despite persistent pain, could find other available jobs in the Washington Parish area which he could physically perform. The plaintiff was therefore held to be a partially disabled employee entitled to compensation benefits at $141.00 per week for 444 weeks, six weeks of which had already been paid. The trial court also found plaintiff's injury resulted from the accident of October 5, 1978 and that only Ford, Bacon & Davis Construction Company and its insurer were responsible for the compensation benefits. Thus, H & L Construction Company and Commercial Union Insurance Company were dismissed from the suit.
Ford, Bacon & Davis Construction Corporation and its insurer, Aetna Casualty & Surety Company, appealed suspensively this judgment. On appeal, they deny the plaintiff has any disability as a result of the alleged accident of October 5, 1978. In the alternative, they contend if plaintiff is found to be disabled, the disability results at least in part from an accident on February 5, 1979 which plaintiff had while working with H & L, and that both employers should be responsible. Plaintiff filed an answer to the appeal seeking to be declared totally rather than partially disabled and asking for relief against both sets of defendants.
We first address the issue of the extent of plaintiff's disability. La.R.S. 23:1221(1), (2) state essentially an employee is totally disabled when he cannot engage in any gainful occupation for wages. In contrast, an employee is deemed partially disabled if he is unable "to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience...." La.R.S. 23:1221(3).
However, the Louisiana Supreme Court has recently adopted the "odd-lot" doctrine as the controlling test in determining whether an employee is totally and permanently disabled. In Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), this doctrine was formulated as follows:
"In order to determine whether the plaintiff fits within this category of oddlot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he `cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.' If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with `a gainful occupation.'" (Citations omitted.) 390 So.2d at 1323-24.
*297 The "odd-lot" doctrine has also been applied to working-in-pain cases. Lattin v. Hica Corp., 395 So.2d 690 (La.1981). Although the law does not generally require a person to work in substantial pain, the Lattin case requires a claimant in substantial pain to prove his pain appreciably limits the type of work available to him and greatly diminishes his ability to compete in the labor market before a prima facie showing of odd-lot status is established. However, if a worker cannot perform the same work he did prior to his injury due to substantial pain, but has the mental and physical capacity to perform other available jobs, then he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
In the action before us, appellant Ford, Bacon & Davis contends since plaintiff continued to work after the two incidents to which the injury could be attributed, he is not even partially disabled. Indeed, the record shows plaintiff's income actually continued to increase following his back injury, except in 1979. Though plaintiff has had no difficulty in locating employment, the evidence establishes plaintiff was working in substantial and appreciable pain out of economic necessity. Even his work as a foreman, which continued through April of 1981, was performed in pain. When he was forced to return to work as a pipe fitter, the pain was so unbearable plaintiff quit his job.
Plaintiff returned to Dr. Matta on January 14 and April 21, 1981 complaining of pain. X-rays taken on January 14, 1981 showed a marked decrease of the L5-S1 interspace, which could have resulted either from the process of aging or from his disc injury. A report from Dr. Richard Levy, a neurosurgeon who examined plaintiff indicated muscle atrophy in one of plaintiff's legs. From these developments which indicated plaintiff's condition had worsened, Dr. Matta determined plaintiff should no longer continue work as a pipe fitter-welder, since such work could result in continued degeneration of his back. Dr. Matta further stated plaintiff should avoid any type of work that will require persistent bending, stooping, climbing, squatting, or lifting more than ten pounds.
We agree with the trial court plaintiff's back condition precludes further work as a pipe fitter or pipe welder. However, we believe it erred in holding the "odd-lot" doctrine to be inapplicable. Under the facts in the record, Mr. Wheat has shown his physical impairment and pain has limited appreciably the types of work available to him and has diminished his ability to effectively compete in the job market. Not only does plaintiff's physical impairment and pain prevent him from doing work as a welder, it also prevents him from performing work as an auto mechanic, the only other type of work for which he is trained. Any other work which plaintiff might perform is greatly limited, since almost any job involving primarily physical labor requires persistent lifting and bending. Since plaintiff presented a prima facie case of "oddlot" status, the burden of proof shifted to the employers to show other available jobs which plaintiff could physically handle and which could provide him a steady income. The employers produced no such evidence and, therefore, we conclude plaintiff is permanently and totally disabled. See, Crockett v. St. Paul Ins. Co., 413 So.2d 949 (La. App. 1st Cir.1982).
We next address the issue of what accident resulted in plaintiff's disability. The trial court, as mentioned above, held the plaintiff's disc injury was sustained on the Ford, Bacon & Davis job and plaintiff did not sustain an industrial accident on the H & L Construction Company job. Rather, the trial court found plaintiff's painful back and restricted movement following the day's work on February 5, 1979 was a result of his pre-existing disc injury which resulted from his October 5, 1978 accident. This factual finding cannot be disturbed unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The evidence clearly supports the finding that the disc injury resulted from a *298 work-related accident which plaintiff suffered on October 5, 1978 while working with Ford, Bacon & Davis. All of plaintiff's back trouble began with a sudden and unforeseen event which occurred on that date. As he lifted a piece of heavy pipe on that day, his fellow employee testified he stated "I hurt my back." This accident was reported to plaintiff's foreman and an accident report was prepared. Plaintiff testified his back has hurt him continuously since this accident. Dr. Matta also stated, based upon the case history as given to him by plaintiff, he believed plaintiff's ruptured disc was originally caused by the October 5 accident from which he never completely recovered. We therefore hold plaintiff's disability, at least in part, was caused by a work-related accident which occurred while he was working with defendant Ford, Bacon & Davis.
However, defendant Ford, Bacon & Davis contends they should not be solely responsible for the compensation benefits, since any disability which plaintiff has resulted not only from the October 5, 1978 accident, but also from the February 5, 1979 accident which occurred while plaintiff was working with H & L Construction Company. It is well settled that workers' compensation benefits are payable when an occupational accident aggravates or accelerates a pre-existing condition and produces disability. Crawford v. Al Smith P. & H. Service, Inc., 352 So.2d 669 (La.1977); Chism v. Kaiser Aluminum & Chemical Corporation, 332 So.2d 784 (La.1976). Therefore, part of the compensation should be paid by H & L if the trial court was erroneous in its finding that there was no employment accident on February 5, 1979.
La.R.S. 23:1021(1) defines "accident" as "an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." Yet this statute has been construed liberally. It has been held that "when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present." Ferguson v. HDE, Inc., 270 So.2d 867, 869 (La. 1972), remand 274 So.2d 783 (La.App. 3d Cir.1973). Nor must the accident be "unexpected" or "unforeseen," since employees whose injuries are quite predictable due to pre-existing conditions are protected as completely as normal workers by the Act. Crawford, supra; Chism, supra. Nor must the injury be immediately revealed by objective symptoms, since strain injuries seldom reveal such symptoms at the time of the injury, though they are clearly covered by the Act. See Melder v. Century Tel. Enterprises, 413 So.2d 1325 (La.App. 3d Cir.1982); Scanlan v. Bernard Lbr. Co. Inc., 365 So.2d 39 (La.App. 4th Cir.1978).
We conclude plaintiff did suffer a work-related accident on the H & L Construction Company job in that his pre-existing back injury was aggravated by the strenuous work in which he was engaged. Though plaintiff could not attribute the severe pain which he suffered by the end of the day to any specific event, clearly the continuous lifting of heavy sections of pipe led to an aggravation of plaintiff's back condition. After all, this is precisely the same type of work which initially led to plaintiff's rupture. Though plaintiff testified it felt like a reoccurrence of the Ford, Bacon & Davis injury, he related the pain was much more severe following the H & L injury. Plaintiff's severe pain was reported to Mr. Richardson, who let plaintiff have the next day off to see a doctor. Plaintiff was then referred to Dr. Matta, who saw plaintiff for the first time a few days after the H & L incident. Dr. Matta later opined that, based upon what plaintiff told him, his disc condition resulted from both of the interrelated injuries, the latter of which enhanced the previous injury. The fact that plaintiff received compensation benefits for six weeks after his injury on February 5, 1979, though paid by Ford, Bacon & Davis's insurer, also supports the finding that plaintiff aggravated his back condition on that day.
We therefore hold both accidents were contributing causes of plaintiff's ultimate disability. In such a case, both employers *299 and their insurers are solidarily liable for the payment of compensation. Lachney v. Employers Com. Union Ins. Co., 337 So.2d 624 (La.App. 4th Cir.1976); Scott v. Hartford Accident & Indemnity Company, 302 So.2d 641 (La.App. 3d Cir.1974); Carter v. Tri-State Insurance Company, 259 So.2d 433 (La.App. 2d Cir.1972).
The appeal in this case was taken by defendant Ford, Bacon & Davis and its insurer. Plaintiff answered the appeal, but failed to perfect a separate appeal against defendant H & L Construction Company and its insurer. H & L filed a motion to dismiss the appeal by Ford, Bacon & Davis and also moved to dismiss the plaintiff's answer, insofar as the appeal and the answer related to them. This Court denied the motion to dismiss the appeal, holding that an appeal by a defendant cast in judgment brings a co-defendant responsible in solido, if at all, before the appellate court even though no third party demand has been filed. However, the motion to dismiss the answer to the appeal insofar as it attempted to secure relief against H & L and its insurer was granted, since an answer to an appeal is effective only as to an appellant. Wheat v. Ford, Bacon and Davis Const. Corp., 414 So.2d 823 (La.App. 1st Cir.1982).
The appeal taken by Ford, Bacon & Davis and its insurer, having brought defendant H & L Construction Company before this Court, is tantamount to filing a third-party action. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963); Vidrine v. Simoneaux, 145 So.2d 400 (La.App. 3d Cir.1962). We therefore can properly hold H & L liable for contribution to Ford, Bacon & Davis as a solidary obligor. See La.Civ.Code art. 2103, as effective at pertinent times. In such a case, it is not proper to reserve unto Ford, Bacon and Davis the right to demand contribution from H & L in a separate proceeding, since all interested parties were represented on the merits at trial and no useful purpose would be served by requiring a separate procedure to determine an issue which is being resolved here. See Vidrine, supra, at p. 406. However, we cannot render a judgment against H & L directly in favor of plaintiff, since his failure to perfect a separate appeal against H & L has allowed the trial court judgment dismissing H & L to become final against him. Roy v. Edmonson, 221 So.2d 583 (La.App. 4th Cir. 1969).
For the reasons assigned, the judgment appealed from is amended to the extent plaintiff's benefits are increased to compensate him for total disability. It was stipulated in this court plaintiff's wages were such as to entitle him to the statutory maximum provided in La.R.S. 23:1202. Since the trial court found plaintiff's disability began on April 10, 1981, plaintiff is entitled to $163.00 per week, the maximum weekly compensation rate for the year beginning September 1, 1980. Appellants Ford, Bacon & Davis and its insurer, Aetna Casualty and Surety Company, are hereby condemned to pay this weekly rate of compensation, together with judicial interest thereon until paid, for the duration of the disability. The judgment against appellants Ford, Bacon & Davis and Aetna is affirmed in all other respects, including the order for a lump sum payment of the compensation due since April 10, 1981 with legal interest thereon from the date of judicial demand, for past and future medical expenses, and for expert fees and costs. The judgment of the trial court is, however, hereby reversed insofar as it dismissed H & L Construction Company and Commercial Union Insurance Company. These parties are condemned, as solidary obligors with appellants, to contribute to appellants one-half of the amount to be paid by appellants to plaintiff and to share equally in the payment of all costs with appellant.
AMENDED IN PART; AFFIRMED IN PART; REVERSED IN PART AND RENDERED.

ON REHEARING
PER CURIAM.
In applications for rehearing both employers have correctly pointed out we *300 awarded the wrong rate of compensation. We found the accidents which occurred on October 5, 1978 and February 5, 1979 both combined to produce plaintiff's disability which began on August 10, 1981. We then awarded the maximum rate of compensation based upon the rates in effect during the period from September 1, 1980 until September 1, 1981. Although the compensation award does not begin until the pain resulting from the accident becomes disabling (see Melder v. Century Tel. Enterprises, 413 So.2d 1325, 1329 [La.App. 3d Cir. 1982]), the rate of compensation is based upon when the injuries occurred. La.R.S. 23:1202. Since both injuries occurred in the compensation year beginning September 1, 1978, the proper rate of compensation is the maximum rate for that year which is $141.00 per week. We thus amend the original judgment of this court to change the rate of compensation from $163.00 per week to the sum of $141.00 per week. Finding no merit in the other contentions asserted in the applications for rehearing, the original judgment of this court is affirmed and all applications for rehearing are denied.
REHEARING DENIED.