FORET, Judge.
Ernest M. Procell sued his former employer, Willamette Industries and its insurer, Employers Liability Insurance Company of Wisconsin (hereinafter referred to as Wausau) for worker’s compensation benefits, penalties, and attorney’s fees. The issues on appeal are:
(1) Whether the trial court erred in finding claimant to be totally and permanently disabled;
(2) Whether the trial court erred in setting the date from which benefits were to run;
(3) Whether the trial court erred in setting the amount of compensation;
*983 (4) Whether the trial court erred in granting claimant penalties and attorney’s fees.
FACTS
Ernest M. Procell was employed by Willamette Industries at its mill in Zwolle, Louisiana, as a heavy-equipment operator. Some time prior to June 1, 1980[1], claimant was driving a log loader when the right front wheel of the loader fell into a deep hole in the log yard. Consequently, claimant was thrown about inside the cab and struck his left hip on an unpadded armrest, causing a large bruise to develop. -
At first, the pain was not severe and claimant missed no work due to his injury. His condition began to gradually worsen, however, and became so severe as to require medical attention. Claimant decided on March 1,1981, that he must see a doctor and finally saw one for the first time on March 3, 1981. The examination revealed that claimant suffered from asceptic necrosis of the left femural head, which is a deterioration of the bone caused by the gradual cutting off of the blood supply. Because of the injury, claimant immediately underwent surgery for a total hip replacement. After the operation, claimant continued to experience pain and remained out of work for over a year. During this period of inactivity, Wausau paid claimant $148 per week in compensation.
In June of 1982, claimant began working on a part-time basis with the Sabine Parish Police Jury as a CETA[2] supervisor. Later on, in August of the same year, claimant began working full-time as a motor-grader operator. Feeling that claimant was partially, permanently disabled[3], when Wau-sau discovered that claimant was back at work, they suspended benefits on September 30, 1982, because claimant was making more with the Parish than he was as an employee of Willamette.
After claimant’s benefits were cut off, he filed suit. Without assigning reasons for judgment, the trial court found the claimant to be totally and permanently disabled and awarded him $148 per week as compensation, starting on June 1, 1980. It also awarded claimant damages for penalties and attorney’s fees. From this judgment, the defendants appealed, arguing that claimant was not totally and permanently disabled, and that the trial court incorrectly set the date from which benefits were to run. Also, they seek a reversal in the court’s ruling as to penalties and attorney’s fees. Claimant has answered the appeal, seeking an increase in both the amount of compensation and attorney’s fees.
CLAIMANT’S DISABILITY
Claimant’s attending physician was Dr. E.C. Simonton, an expert in the field of orthopedics. Dr. Simonton felt that claimant was having a standard recovery from the operation and found no objective signs to support his claims of severe pain. In addition, he felt that claimant could return to any type of work which did not require squatting, climbing, or constant standing or walking.
Claimant was also examined by Dr. Joseph A. Thomas, a specialist in family practice with considerable experience in orthopedic and traumatic medicine. His opinion differed from Dr. Simonton’s. Dr. Thomas did see objective signs of pain in that he found a serious lessening of the muscle mass of the left hip. He found claimant to *984 have a 65% disability of the left hip and 25% disability of the body as a whole. Dr. Thomas saw little evidence of any chance of claimant’s condition improving with the passage of time and felt claimant’s only opportunity for future employment would be some type of sedentary activity.
Both claimant and his wife testified as to the severe pain he was suffering. Both stated that claimant’s condition worsened after a day’s work, even to the point where he could not sleep at night. The couple also stated that the only reason claimant returned to work was out of economic necessity.
The couple’s testimony as to pain was supported by claimant’s co-worker, Robert Douglass Swindoll. Swindoll testified that both he and claimant were required to stand up in the cab of the machinery for long periods of time in order to operate them properly. Claimant could not operate the machine for more than one hour at a time without having to stop because of the severe pain caused by the excessive standing. The constant shaking of the machinery also caused claimant some difficulty. Finally, Swindoll stated that he often saw the pain manifest itself through the look on claimant’s face.
After considering all the evidence, we find the claimant to be in substantial pain. Substantial pain cases are to be analyzed within the framework of the odd lot doctrine. Lattin v. HICA Corporation, 395 So.2d 690 (La.1981).
Under the Louisiana jurisprudence, a worker is considered totally disabled if his injury makes him an “odd lot” in the labor market, that is, one capable of obtaining employment periodically, but one whose services are so limited in quality, dependability, or quantity that a reasonably stable market for his services does not exist. Lattin v. HICA Corporation, supra. If the claimant can prove that his physical impairment, mental capacity, education, training, age, availability of work in his area, and any other relevant factor, has placed him at a substantial disadvantage in the labor market, he has made out a prima facie case for classification in the odd lot category. After claimant has made out his case, the onus is on the employer or insurer to show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee’s residence. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
The record shows that claimant’s only job skill is limited to heavy equipment operation. He is a 54-year-old illiterate. His IQ is in the bottom 2% of the nation and he has little education or job training. Because we find that claimant cannot do the only work that he is qualified to do (namely, heavy equipment operation) without suffering from substantial pain, and considering the other factors which severely limit his ability to compete in the competitive labor market, we find the trial court was correct in finding Ernest Procell to be totally and permanently disabled.
COMPENSATION
The first question to be answered regarding the trial court’s compensation award concerns the proper date from which benefits are to run. The trial court awarded claimant compensation benefits from the date of the accident, June 1, 1980. Defendants argue that claimant was not suffering in substantial pain for months after the accident, and therefore, he did not become totally disabled until he could not work absent substantial pain. We agree.
Claimant’s own testimony showed that he suffered only minor pain after the accident and that the pain did not prevent him from working. As the condition of the claimant’s hip became more severe, so did the degree of pain. Finally, claimant could stand it no longer, ceased working, and decided to seek medical help on March 1, 1981.
It is well settled that compensation does not begin until the pain resulting from the accident becomes disabling. Melder v. Century Telephone Enterprises, *985 Inc., 413 So.2d 1325 (La.App. 3 Cir.1982). We find that claimant first suffered from substantial pain on the date he ceased working, and thus became totally disabled under the odd lot doctrine on that date. We therefore amend the judgment so as to award benefits starting on March 1, 1981.
The next question to be decided is the proper date upon which claimant’s compensation rate is to be calculated. The trial court’s award of $148 per week was based on the maximum compensation rate available at the time of the accident, June 1, 1980. Claimant argues that the trial court erred in not basing the compensation rate on the maximum rate available at the time of claimant’s disability, March 1, 1981. We disagree.
It is undisputed that claimant’s wages were such as to entitle him to the statutory maximum provided in LSA-R.S. 23:1202. This section specifies that the maximum weekly compensation shall be 66⅝% of the “average weekly wage paid in all employment subject to Louisiana Employment Security Law”. It further provides in paragraph B that:
“B. For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the office of employment security on or before August 1 of each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve-month period commencing September 1 following the determination.” (emphasis ours).
This provision clearly refers to the date of occurrence of injury for determination of the rate of compensation. In view of the clear language of the statute, we cannot interpret this to mean that payments are to be based on the date of disability. Wheat v. Ford, Bacon and Davis Construction Corp., 424 So.2d 293 (La.App. 1 Cir.1982), writ denied, 429 So.2d 158 (La.1983); Harris v. Louisiana Paving Company, Inc., 427 So.2d 1352 (La.App. 2 Cir.1983). See also: Bonnette v. Travelers Ins. Co., 367 So.2d 1261 (La.App. 3 Cir.1979); Garcia-Lopez v. Central Air, Inc., 410 So.2d 253 (La.App. 4 Cir.1981). The date of the accident and the accompanying injury was June 1, 1980, and the trial court was correct in basing the amount of compensation on the maximum compensation rate available at that time.
PENALTIES AND ATTORNEY’S FEES
The final issue to be decided is whether Wausau acted arbitrarily and capriciously in discontinuing compensation payments to claimant. The trial court found that they were, and awarded penalties and attorney’s fees under LSA-R.S. 23:1201.2.
An employer’s conduct in discontinuing worker’s payments must be judged on the facts as they appear at the time payments were discontinued. DeJean v. B.F. Trappey’s Sons, Inc., 285 So.2d 297 (La.App. 3 Cir.1973).
At the time Wausau discontinued payments, the only medical evidence in their possession was Dr. Simonton’s report, which indicated that claimant could return to work and that he saw no objective signs to substantiate claimant’s claim of substantial pain. Dr. Thomas’ opinions were not available to Wausau because his deposition was not taken until a few days before trial. In addition, we have a case where claimant had actually returned to work. Claimant’s supervisor, who spoke with Wausau, stated that the claimant had made no indications to them that he was in severe pain, was performing satisfactorily, and had missed little or no work.
Because of the report of Dr. Si-monton and the fact that claimant had returned to work, a genuine dispute existed as to whether claimant was actually totally and permanently disabled. Kirkley v. DSI Transports, Inc., 416 So.2d 584 (La.App. 1 Cir.1982). We find the trial court’s award of penalties and attorney’s fees to be manifestly erroneous.
*986 For the aforementioned reasons, the judgment of the trial court awarding claimant $148 per week for total and permanent disability is affirmed. This judgment is amended, however, so that benefits commence from March 1, 1981. The judgment of the trial court awarding statutory penalties and attorney’s fees is hereby reversed. All costs of this appeal shall be divided equally between appellant and appellee.
AFFIRMED IN PART, AMENDED, AND REVERSED IN PART.

. The exact date of the accident is unknown, but for all practical purposes, June 1, 1980 will be considered as the accident date.

. CETA is a jobs program sponsored by the Federal Government.

. LSA-R.S. 23:1221 provides:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

"(3) For injury producing partial disability ..., sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages,"