486 So.2d 283 (1986)
Euna JOLIBOIS, Plaintiff-Appellee,
v.
HARTFORD ACCIDENT & IND. CO. et al., Defendants-Appellants.
No. 85-240.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
Writ Denied June 13, 1986.
*284 Jeansonne, Briney, Charles J. Foret, Lafayette, for defendants-appellants.
Brinkhaus, Dauzat by Jimmy L. Dauzat, Opelousas, for plaintiff-appellee.
Before LABORDE and YELVERTON, JJ., and FONTENOT[*], J. Pro Tem.
LABORDE, Judge.
Plaintiff, Euna Jolibois, filed suit against Concrete & Steel Erectors, Inc. and its workers' compensation insurer, Hartford Accident and Indemnity Company, seeking to recover workers' compensation benefits, medical expenses, penalties, and attorney fees. The claim is based on the disability of plaintiff resulting from a myocardial infarction.
The trial court rendered judgment in favor of plaintiff, finding him totally and indefinitely disabled. The trial court awarded plaintiff workers' compensation benefits at the rate of two hundred four and no/100 ($204.00) dollars per week, subject to credit for Social Security benefits. The trial court awarded accrued medical expenses totaling thirty-six thousand, six hundred ninety-one and 35/100 ($36,691.35) dollars. Further, the trial court awarded plaintiff the statutory penalty of twelve (12%) percent on all sums due plus attorney fees of six thousand ($6,000.00) dollars. Defendants appeal, setting forth five assignments of error. Plaintiff answers the appeal and prays for an increase in attorney fees to eight thousand, five hundred ($8,500.00) dollars.

ASSIGNMENTS OF ERROR
1) The trial court erred in finding that the plaintiff's heart attack was caused by or in any way was connected with plaintiff's employment with defendant.
2) The trial court erred in finding that the defendants' failure to pay compensation benefits was arbitrary and capricious.
3) The trial court erred in finding the plaintiff to be totally disabled.
4) The trial court erred in awarding plaintiff $36,691.35 for medical expenses incurred as a result of this accident.
5) The trial court erred in not giving defendants a credit for the period of time where plaintiff actually returned to work with defendant.

FACTS
Euna Jolibois was forty-nine years old at the time of the trial and has worked as an ironworker for most of his adult life. He began working for defendant, Concrete and Steel Erectors, Inc., in 1982. In May of 1983, plaintiff was employed by defendant as an ironworker/foreman. For a period of time, plaintiff was required to work at two job sites, one during the weekdays and one *285 on the weekend. He had experienced an episode of chest pain at work in January of 1983, but the pain was minor and short-lived. He had not encountered any other health problems until May of 1983. On Sunday, May 22, 1983, while on duty at one of the job sites, plaintiff began to suffer chest pain after he had done some lifting. Thinking the discomfort was due to a muscle spasm, plaintiff continued to work and did not think much about the incident until the next day.
Again on Monday, the pain returned, this time more severe. This progression continued each day that week (except Thursday) until Friday, when the pain was the most prolonged and intense. After work at 3:30 p.m. on the twenty-seventh, plaintiff went home, rested awhile, and got dressed for a class reunion. The reunion was a sedate affair consisting of small talk and a supper. Plaintiff commented that the chest pain or angina never completely disappeared, but that it "got considerably worse later on in the night...."
At approximately 11:30, plaintiff and his wife returned home and prepared for bed when the angina flared. Good sense overcame plaintiff, who agreed to see a doctor and was taken to Opelousas General Hospital. That night, plaintiff was diagnosed by Dr. Dudley Bienvenue as being in the state of impending myocardial infarction. The next day, Dr. Bienvenue referred plaintiff to Dr. Redding of Lafayette General Hospital, who ultimately successfully treated plaintiff by performing a coronary bypass surgery on him.
After the standard one week hospitalization following open heart surgery, plaintiff was released and has continued to recover. Plaintiff returned to work with defendant on September 11, 1983, and resigned November 13, 1983, complaining of physical exhaustion and chest pain. Plaintiff has not attempted gainful employment since then.
Appellant's first assignment of error relates to a factual determination made by the trial court: whether the trial court erred in finding that plaintiff's employment with defendant caused or precipitated plaintiff's myocardial infarction.
In order to recover benefits under the Louisiana Workers' Compensation Law, the employee must establish that he received a "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031.[1] Heart attacks have been held to be accidents within the purview of our workers' compensation laws. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Bertrand v. Coal Operators Casualty Co., 253 La.1115, 221 So.2d 816 (La.1969). "An accident that happens while an employee is actively engaged in the performance of his duties during working hours will be regarded as having occurred in the course of his employment...." 1 W. Malone & H. Johnson, Workers' Compensation sec. 161 in 13 Louisiana Civil Law Treatise 303 (2d Ed. 1980); Chapman v. Belden Corp. 428 So.2d 396 (La.1983); King v. Wilson Brothers Drilling Co., Inc., 441 So.2d 68 (La. App.3d Cir.1983).
The plaintiff carries the burden of proving by a preponderance of the evidence that there is a connection between the heart attack and the employment activity. Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829 (La.1982); Guidry v. Sline Industrial Painters, Inc., supra. After reviewing historic and current jurisprudence of the Supreme Court on the subject of heart attack in worker compensation cases, the Guidry court concluded:
"In summary, the jurisprudence of this Court has been fairly liberal in linking ensuing disability to admitted work accident (for example, there is the Bertrand presumption of causal connection between accident and disability), and insofar *286 as linking work accident to work stress and exertion without the necessity for a traumatic incident. But there has been in this Court's jurisprudence no determination that there exists a presumption that a heart accident sustained at work is caused by the employment....
[T]he cases in this Court have always required that there be some causal relation between employment and accident. This conclusion that a heart accident must be causally related in part, however slight, to the employment, is no new or novel approach to applying the compensation law."
Id. at 632 (footnotes omitted).
The difficulty in determining a causal relation in any case can be difficult; this difficulty is exacerbated when the exact cause of a heart attack must be determined. The variables are great and the medical community is not completely unified in weighing the impact of various factors, e.g., the effect of mental stress. Another aggravating factor in locating the nebulous cause of heart failure is the ubiquitous presence of some degree of pre-existing heart disease or vascular infirmity found in heart attack victims.[2] Nonetheless, we are guided by our Supreme Court which has set out the rule of law: "[W]ork related stress or exertion preceding a heart attack bears a causal relationship to that heart attack, at least in part, even where there is a pre-existing heart disease." Id. at 632, 633.
The burden of showing, by a preponderance of the evidence, that the work effort, stress, or strain in reasonable probability contributed in some degree to the heart attack is still borne by the plaintiff. For the heart accident to arise out of or be connected with the employment, the plaintiff must show that the exertion, stress, or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday nonemployment life (e.g., as compared to the more or less sedentary life of the average non-worker). Id. at 633. Our duty, as an appellate court, is not to make the determination, but to decide whether the trial court was clearly wrong in finding a causal connection between Mr. Jolibois's work effort and his subsequent myocardial infarction. We find ample proof in the record to support the trial court's findings.
The bulk of the lay testimony depicts plaintiff's physical and mental stresses experienced on his jobs. Mr. Jolibois testified that during May of 1983, he was required to work seven (7) days a week at two different job sites. As foreman, he ran the job on a day-to-day basis. Apparently, plaintiff's boss at Steel Erectors and the general contractor disagreed as to the viability of specifications in the plans for the building. The building could not be brought into plumb as specified in the plans. Plaintiff felt abuse from both sides, unable to satisfy either of the contractors. Plaintiff testified that he lived under constant pressure and anxiety, thinking of possible solutions to correct the job.
Plaintiff also related how he was physically active on the job site the week of the accident, doing whatever needed to be done, including: lifting and moving a four hundred (400) to six hundred (600) pound section of stairs some two hundred (200) feet in the mud with two other men and; carrying a thirty (30) to fifty (50) pound torch over two hundred feet in ankle deep mud. After the latter incident, plaintiff collapsed with intense chest pain. Thinking the pain was associated with muscle cramps or spasms, after one-half hour rest, plaintiff resumed work, but continued to feel short-of-breath and tight-chested. This condition, plaintiff stated, grew progressively worse throughout the week upon physical exertion.
Plaintiff's account of his workday is entirely substantiated by his family and workmates, including defendants' witness, Mr. Harry Sherburne, vice president/construction manager of Concrete and Steel Erectors, Inc. Mr. Sherburne noted that, as foreman, plaintiff had total control *287 of the job from start to finish with company guidance provided as needed. Mr. Sherburne explained that the alignment problems which plaintiff was experiencing on the job were due to fabrication errors and foundation errors between the contractor and the steel fabricator, not because of any failing on the part of plaintiff. Mr. Sherburne, who felt the plumb job was within tolerance of industry standards, noted that plaintiff would be the first to receive complaints by the general contractor. Only after the foreman could not reconcile with the general contractor would Mr. Sherburne be contacted. Mr. Sherburne offered no report on plaintiff's daily work habits or knowledge of plaintiff's chest pain, stating: "No cause I wasn't in that [sic] daily contact that much with Euna [Jolibois]."
Other lay witness testimony establishes that Mr. Jolibois's home life was calm and relatively free from stress. The Jolibois family enjoyed financial security and suffered no remarkable marital difficulties.
The medical testimony, offered in evidence through deposition, is indefinite at best.[3] Three doctors testified as to the cause of the myocardial infarction suffered by plaintiff. Dr. Bienvenu was the first doctor to treat plaintiff. When given a detailed hypothetical question, Dr. Bienvenu was unable to express a conclusive opinion as to a causal relationship between employment and the heart attack. Dr. Paschal Redding treated and performed the bypass surgery on plaintiff. When presented with the hypothetical question, Dr. Redding opined that the employment could have definitely precipitated the heart attack.[4] Dr. John Phillips examined plaintiff some five months after plaintiff's surgery. Reviewing plaintiff's medical records and physique, Dr. Phillips opined that no relationship existed between employment and the heart attack.
Without reciting the hypertechnical analysis of the doctors, all of whom are eminently qualified and equally enlightening, we find no clear error with the trial court's decision to accept Dr. Redding's testimony over other doctors' testimony. This choice is particularly appropriate in light of our suggestions to trial courts to give greater weight to the testimony of treating physicians rather than to physicians who examine plaintiffs for diagnosis only. Delco v. Heritage Manor Nursing Home, 441 So.2d 309, (La.App. 3d Cir.1983), writ denied, 443 So.2d 1123 (La.1984). We add that the ultimate determination as to whether a disability claimant has proved the causation of his disability is made by the courts and not by the medical experts. Martin v. H.B. Zachry Company, 424 So.2d 1002 (La.1982). Finding no manifest error in the trial court's ruling, defendants' first assignment lacks merit.
Appellants' second assignment of error also relates to a factual determination: whether defendant's failure to pay compensation benefits was arbitrary and capricious. We have reviewed the record and find no manifest error in the trial court's award of attorney's fees of $6,000.00 dollars and penalties of twelve (12%) percent on sums due.
The trial court awarded these amounts pursuant to LSA-R.S. 22:658, which provides for the imposition of penalties and attorney's fees when the failure to pay workers' compensation insurance is "arbitrary, capricious, or without probable cause." The purpose of this penalty provision of the workers' compensation law is to discourage attitudes of indifference to the injured employee's condition. Guillory v. United States Fidelity & Guaranty Insurance *288 Company, 420 So.2d 119 (La.1982); Doyle v. United General Insurance Company, 458 So.2d 152 (La.App. 3d Cir.1984). A better example of indifference could scarcely be found.
Plaintiff first demanded payment of compensation benefits from Concrete and Steel Erectors, Inc. on March 13, 1984; the opinion of Dr. Redding annexed thereto establishes a reasonable relationship between plaintiff's employment, heart attack, and disability. On April 17, 1984, plaintiff addressed a similar letter, and enclosed medical bills, to Hartford Accident and Indemnity Company. Plaintiff sent various other demand letters to defendants through the summer. The record discloses no effort on behalf of defendants to investigate or to determine the validity of plaintiff's demand. Rather, defendants ignored plaintiff's plight until after Dr. Redding's deposition on September 12, 1984some six months after plaintiff's initial submission of proof of loss. Hartford refused payment without probable cause; the record supports the trial court's determination that Hartford's refusal to pay was arbitrary. See Antilley v. Sentry Insurance Company, 426 So.2d 1370 (La.App. 3d Cir. 1983). This assignment lacks merit.
Defendants assert in their third assignment of error that the trial judge erred in finding plaintiff to be totally disabled. We find no error in this determination.
"In order to determine whether the plaintiff fits within this category of odd-lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he `cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.' Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with `a gainful occupation.' It is fairer to place the burden on the defendant to show that there are steady jobs available to the plaintiff after plaintiff has shown his odd-lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation." (citations omitted)
Oster v. Wetzel Printing, Inc., 390 So.2d 1318, 1323, 1324 (La.1980); see also Procell v. Employers Liability Insurance Company of Wisconsin, 450 So.2d 981 (La.App. 3d Cir.1984).
The medical testimony conclusively establishes that plaintiff is physically unable to resume work as an ironworker or as an employee required to perform any strenuous duties. The defendants' own witness, Dr. Phillips, testified that plaintiff could perform sedentary work, but that he should avoid extremes of emotional stress. Considering plaintiff's age, limited educational background, work experience, and rural domicile, plaintiff's work options are extremely limited. We must also consider plaintiff's uncontradicted testimony which indicates that he still experiences pain upon physical exertion. This testimony is supported by other lay witnesses. Plaintiff certainly presented a prima facie case for classification in the odd-lot category. Oster, supra at 1324.
Defendants attempted to demonstrate that jobs are available to workers in plaintiff's condition and locale. Mr. Leonard Francois, an expert in vocational rehabilitation, performed a labor market survey and testified as to plaintiff's job opportunities in the south-central Louisiana market. In the trial judge's opinion, Mr. Francois' testimony *289 failed to establish that there are jobs available to provide a steady income to plaintiff. Several jobs were mentioned, but each failed to meet the trial judge's criteria for acceptability. Appellants characterize the trial judge's questioning of Mr. Francois as captious; we find the questions reasonable and find no error in the trial judge declaring plaintiff to be indefinitely totally disabled. This assignment lacks merit.
Appellants' fourth assignment of error asserts that the trial court erred in awarding plaintiff thirty-six thousand, six hundred ninety-one and 35/100 ($36,691.35) dollars for medical expenses incurred as a result of plaintiff's heart attack. It is well settled that "the employer shall furnish all necessary medical, surgical, and hospital services, and medicines" to injured employees under workers' compensation law. LSA-R.S. 23:1203. Appellants assert that plaintiff failed to prove the amount of medical expenses actually incurred as a result of the accident. We disagree.
The trial court entered its pre-trial order on July 12, 1984. The order required the parties to submit their lists of exhibits to the court by October 15, 1984.
"The Court orders that any objections to the documentary evidence or exhibits so filed be raised by formal contradictory motion ... [i]f no formal objection or opposition is made thereto, the Court will consider all such exhibits listed as authentic and admissible, reserving to all parties the right to challenge the same for necessity, connexity and/or reasonableness."
Plaintiff followed the order of the trial court and pre-filed the medical bills. The medical bills were entered into evidence in globo on November 9, 1984, without objection as to their connexity and/or reasonableness. For the first time, on this appeal, defendants assert that there was no proof of a relationship between the medical bills in evidence and the heart attack.
We view defendants' long silence as a waiver; the trial court was reasonable in inferring a confirmation of connexity from defendants' silence. Assuming arguendo that defendants made no such waiver, we find that there was sufficient evidence presented at trial to show that these expenses are reasonably related to plaintiff's injury. Fagan v. Delta Steel & Construction Company, 449 So.2d 1143, 1146 (La.App. 3d Cir.1984). This assignment lacks merit.
Appellants' fifth and last assignment of error suggests that defendants should be given a credit for the time period that plaintiff returned to work with Concrete & Steel Erectors, Inc. after the surgerySeptember 11, 1983 to November 13, 1983. The trial court judgment failed to mention the issue; therefore, we infer a denial of the credit. The trial court was clearly wrong in not granting defendants a credit for time plaintiff actually worked. Defendants would not be entitled to a credit for wages earned by an employee who works in substantial pain or discomfort. The record does not show that plaintiff worked in pain. To the contrary, plaintiff testified that when he experienced bad chest pain, fatigue, and "chills and fever," he quit work and went to the doctor. We amend the judgment to grant defendants a credit for the time period during which plaintiff worked, i.e., between September 11, 1983 and November 13, 1983. Plaintiff is not entitled to workers' compensation benefits for that time period. See Futrell v. Hartford Accident & Indemnity Company, 276 So.2d 271, 275 (La.1973); Thomas v. Holland, 345 So.2d 1000, 1003 (La. App. 2d Cir.1977).
For the above and foregoing reasons, the judgment of the trial court is amended to grant defendants a credit for the time period which plaintiff worked for Concrete & Steel Erectors, Inc. after the surgery. Plaintiff is not entitled to workers' compensation benefits from September 11, 1983 to November 13, 1983.
In addition, we increase the award of attorney's fees by one thousand, five hundred dollars ($1,500.00) to compensate appellee for the work involved in this appeal.
*290 In every other respect, the judgment of the trial court is affirmed with four-fifths (4/5) of the costs of this appeal assessed to appellants, Hartford Accident and Indemnity Company and Concrete and Steel Erectors, Inc., and one-fifth (1/5) of the costs assessed to appellee, Euna Jolibois.
AFFIRMED AS AMENDED.
NOTES
[*] Judge H. Ward Fontenot of the Thirty-Eighth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] LSA-R.S. 23:1031 provides in part:

"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."
[2] Mr. Jolibois had pre-existing arteriosclerosis before he suffered the heart attack.
[3] At this point, we are reminded of our Supreme Court's admonition in Guidry, supra, ft. no. 16:

"It should be noted that this standard does not relieve the plaintiff of the necessity of presenting evidence of medical causation. This recognizes, however that the courts are the ultimate decision makers and must decide legal causation questions definitively where proof of medical causation may be at best indefinite. See note 13, supra."
[4] In its brief, defendants complain that the hypothetical presented to Dr. Redding varied from the facts established at trial. We find no merit to this contention.