MARVIN, Judge.
In this worker’s compensation suit, the employee, who was paid disability benefits for 54 weeks until his doctor released him to return to work, appeals a judgment rejecting his demands for total disability benefits, contending that he is unable to work because of pain. We reverse.
The problems that arise in proving a claimant is disabled because of pain here or in any case are similar to the problems that arise in proving a causal relation between accident and disability. See Malone-Johnson, “Worker’s Compensation”, 2d Ed., La. Civil Law Treatise, Vol. 13, § 288, p. 673. *480 In such cases there has been an increased willingness by the courts to accept the testimony of the claimant as sufficient proof.
“This concept has been expressed in various ways, but they all seem to contain two essential elements for acceptance of the claimant’s testimony as persuasive. First, there must be no other evidence sufficient to discredit or cast serious doubt upon the claimant’s version of the event. And second, his testimony must be corroborated by the circumstances following the alleged event.” Malone-Johnson, supra, § 253, pp. 550-551. (footnotes omitted)
“At times, however, . . . the evidence may fail to show that at the time of trial there was any objective symptom to account for the claimed impairment of function or the pain. But recovery is not arbitrarily denied in such cases. The Act requires only that ‘there are or have been objective conditions of symptoms proven.’ The proof of the occurrence of the accident itself usually satisfies this requirement. Thus the subsequent disappearance of all observable cause for complaint does not defeat the claim if there is satisfactory testimony by medical experts that the complaint is genuine. This is almost always true, of course, of hysteria and traumatic neuroses. As a general rule, the courts are reluctant to brand the plaintiff as a malingerer .
“Lay testimony may often be adduced on the question of pain. Assuming that working in substantial pain will continue to be a foundation for a disability award under the new standard for disability, a claimant may find it necessary to establish the fact of pain. This will usually be done through the testimony of the complainant and his relatives and friends, supported by the evidence of the experts that the objective conditions are of a character expected to produce pain.” Malone-Johnson, supra, § 288, pp. 678-679. (footnotes omitted)
In Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977), the court reiterated this standard of proof.
“Whether pain is substantial enough to be disabling is an issue to be determined by a preponderance of the medical and lay evidence.” 342 So.2d 597
In no case should we place a duty on a compensation claimant to prove his or her entitlement to benefits by more than a preponderance of the evidence. An appellate court is not required by the manifest error principle or by the clearly wrong principle to affirm a trier of fact’s refusal to accept as credible, uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for the rejection and where the factual finding was reached by overlooking applicable legal principles. See West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). This is true whether the issue be pain-eausing-disability or disability-caused-by-accident. Malone-Johnson, § 288.
On October 6, 1975, the employee slipped while at work and his right foot went into a shot blasting machine (called a Wheelabrator). This machine, which is used to abrade and clean steel, seriously injured the employee’s foot. After undergoing surgeries and treatments by several doctors, plaintiff, a maintenance helper, was released to return to work on October 20, 1976, by the orthopedist who first treated him and performed the initial surgery. This orthopedist released plaintiff with an estimated disability of 20 percent of the right leg or 30 percent of the right foot. The amount which would have been owed by the employer for the percentage loss of a member was less than the amount the employer paid plaintiff during the 54 week period.
Plaintiff’s foot was lacerated and torn by the machinery and shot blast. Flesh and skin were torn from the top of the foot, leaving bone and tendons exposed. The extensor tendons to second, third and probably the fourth toe were severed. Nerves were severed. He was hospitalized from October 6 to November 25,1975, and apparently on other occasions.
On October 24, 1975, a skin graft was taken from the body of plaintiff $nd applied to the foot. On January 26, 1976, *481 three neuromas (scarring of an injured or severed nerve) which were causing pain were surgically removed and the nerves were inserted into adjacent blood vessels to allow them an opening in which to grow.
This case was tried in 1979. Plaintiff testified that the pain in his foot becomes sharper upon exertion, standing for 15-20 minutes, walking for a block or two, and that he had attempted to work for approximately two or three days laying rugs and painting, but that he quit because these attempts caused him too much pain. Plaintiff said he had experienced pain in his foot since the time of the injury. Plaintiff’s testimony in this respect is corroborated by the medical evidence. The trial court summarized the corroborating testimony of plaintiff’s lay witnesses to the effect that the 27-year-old plaintiff was an active person and a good worker before his injury, but he has since failed to be active and complained that he is unable to work.
The trial court concluded that in the light of the opinions of four doctors that he could return to work, plaintiff’s claim of pain and disability had not been established.
Plaintiff was seen by four doctors. The medical reports of the orthopedist who first saw plaintiff and performed the initial surgery were introduced in lieu of the orthopedist’s testimony. Three doctors, a second orthopedist, a dolorologist (pain specialist) and a plastic surgeon testified.
These doctors, however, declined to label plaintiff as a malingerer or faker. Each doctor expressed a medical basis for some pain, but not as much as plaintiff complained of. These bases were impaired circulation, damaged nerves, skin graft adhering to a tendon, reflex sympathetic dystrophy, and possible anxiety. Each expressed an opinion that plaintiff should be able to or could return to his work wearing a “Hush-Puppy” type safety shoe.
Under these circumstances, the totality of the evidence, medical and lay testimony, establishes more than a mere claim of pain. The medical facts and opinion are uncontra-dicted that plaintiff had and still has impaired circulation, scarring, adhesions (adherence of skin graft to tendon), increased temperature of the injured foot not voluntarily produced, resulting in an anomaly called reflex sympathetic dystrophy which is hypersensitivity to stimuli, causing some pain. The doctors agreed that plaintiff was not a malingerer and that he was not faking. They agreed that the cause of plaintiff’s complaints was the accidental on-the-job injury. They generally agreed that plaintiff’s pain would probably lessen if he went back to work and that his foot would probably be strengthened and improved if he went back to work. Plaintiff was not motivated to return to work, but this lack of motivation was because of anxiety which is involuntary, whether or not the anxiety is directly related to the accident.
Plaintiff’s initial hospitalization ended on November 25,1975. He saw his first orthopedist 12 times between December 16, 1975 and April 20, 1978. This orthopedist noted that plaintiff’s foot still had some tenderness, there was a fleck of steel in his foot and slight motion in his toes. He also noted that plaintiff complained that his foot swells if he works and that plaintiff had worked for three days the week before but had to quit. His final conclusion was
“My opinion has not changed . this patient should be able to do some type work and . . . if he will, this foot will toughen up and get better and better.”
This orthopedist’s estimate of permanent medical residual (30 percent disability of the foot or 20 percent of the leg) corresponded with the estimate by the second orthopedist who saw plaintiff on November 15, 1976, and on March 3 and October 20, 1977. The second orthopedist also noted plaintiff’s complaints of pain and attributed these complaints to the adherence (growth) of the skin graft onto an underlying tendon. This orthopedist also said plaintiff should be able to return to work wearing a well-padded Hush Puppy type safety shoe.
The trial court said that the testimony of the plastic surgeon and of the dolorologist not only shows a lack of corroboration, but *482 goes against plaintiff’s complaints of continued pain. We do not so construe this evidence and observe in any event, that it is the preponderance of the lay and medical evidence which is the standard in these type cases. Lucas, supra; Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975).
On two occasions (May 1, 1976 and January 4, 1977) the plastic surgeon observed plaintiff walking without a limp. This would “seem inconsistent" with plaintiffs actions before this doctor. On November 7, 1977, the doctor observed that plaintiff was able to tie a shoe on his injured foot without any apparent discomfort. Plaintiff, however, did not contend that he always limped, but did contend that he has had pain, which was increased by standing, or walking, or working, continuously since the 1975 accident.
On the 12 occasions (December 2, 1975 to November 17,1977) plaintiff saw the plastic surgeon, plaintiff complained of pain. Other doctors thought there was some nerve involvement and the plastic surgeon on November 7, 1977, admitted this was a “possibility”, while also admitting that it was a “possibility” that an organic basis for pain was absent. This doctor said that the restructuring or implanting of the damaged or severed nerves into the blood vessels would not guarantee there would be no pain at all.
The trial court also mentioned that the plaintiff’s reflex sympathetic dystrophy had remained static in the two years following the accident and that since improvement or worsening had not occurred, plaintiff did not have objective signs of pain.
The statute, however, is couched in past as well as in present tense (LRS 23:1317) and, in any event, here is what the dolorologist concluded on this point:
“Q . [Hjypothetically [if a patient with the plaintiff’s history] remained in a passive condition these two years, would . . . these complaints of pain ... be consistent with the problems that he incurred that you knew him to have?
“A No, I don’t believe so.
“Q You don’t believe it would be consistent?
“A No. I think it would be more consistent with disuse and problems from scaring. I think the orthopedist would be more capable than I to determine that at this point. Within two years, with a reflex dystrophy, it should either heal itself or should get worse. It very rarely stays static.”
We interpret this language to mean that in the great majority of cases, reflex sympathetic dystrophy improves or worsens in two years but in some few cases it does neither, but remains static.
The dolorologist also objectively corroborates some pain:
He did have some sympathetic-reflex-type problem ... he did have some pain there . . . There was enough information to warrant some pain in the foot but ... it was more of a response than should be present. The anxiety aspect of it was real and not feigned. When a person has a great deal of anxiety and is not motivated to undergo intensive physical [work or] therapy, and responds to what pain he has by simply withdrawing, the success rate is poor. I think it all ties together. I don’t believe this claimant could voluntarily make the temperature in the injured foot drop six degrees as compared to the other foot as a malingerer would present. I think he had some problems but just gave up on it. We expect our mild reflex-dys-trophies to work with pain. This claimant would have been likely to have had pain had he gone back to his employment. His pain is more consistent with disuse and the problems from scarring. His case was rather complicated. He had a reflex sympathetic dystrophy but over-responded and with proper treatment (aggressive physical work and therapy) he should have gotten better but he was simply not motivated to work aggressively-
LRS 23:1317 requires that injuries be proved by evidence “. . . of which *483 there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee . . The factual-legal issues on appeal raise two questions relating to the burden of proof of pain by a preponderance of the lay and medical evidence.
Are there or have [there] been objective conditions for symptoms of pain proven? Is there, quantitatively and qualitatively preponderating, sufficient evidence to discredit or cast doubt upon the claimant’s testimony that he is in pain?
We answer both questions in favor of the plaintiff. Some pain is the opinion of at least three, if not all, of the four doctors. All four found objective conditions which would cause pain, impaired circulation, involuntary temperature change, scarring, adhesion of skin graft to tendon, earlier neuromas surgically removed. This plaintiff feels the pain and its intensity. These objective conditions might produce either more or less pain to other persons. Other persons may be more or less motivated to undergo the aggressive physical work or therapy that would strengthen the foot and increase the individual’s tolerance of the conditions. But in each case the result will be determined by the circumstances of the individual. A claimant who is pre-dis-posed to the effect of pain or who is lacking in motivation to aggressively work to overcome pain, is not to be deprived of worker’s compensation benefits because of these conditions, just as a worker with a pre-disposition to physical injury or physical disability is not deprived of benefits under the principle that an employer takes his employee as he finds him or her. Campbell v. Baker, Culpepper, Brunson, et al., 382 So.2d 1046 (La.App. 2d Cir. 1980); Self v. Riverside Companies, Inc., 382 So.2d 1037 (La.App. 2d Cir. 1980).
The answer to the second question is ad-junctive to the answer of the burden of proof: considering the totality of the evidence, fact and opinion, lay and medical, including that which is consistent with or discrediting of plaintiff's claim of pain, is it more probable than not that the plaintiff is suffering pain which disables him? If there be inconsistencies in the plaintiff’s testimony (and we fail to find them) or if there be discrediting or doubtful evidence, the totality of the evidence nonetheless objectively preponderates in favor of plaintiff. Lucas, supra.
Plaintiff, as a maintenance helper, is a common laborer. A common laborer is considered as totally and permanently disabled if the injury has substantially decreased his ability to compete with able bodied workers in the flexible general labor market. Malone-Johnson, § 277. See Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976). When such an employee is totally disabled at the time of trial and the duration of the disability is not indicated, a judgment for total and permanent disability should be awarded. Juneau v. Tulane Indus. Laundry, 358 So.2d 347 (La.App. 4th Cir. 1978). Walker, supra.
Plaintiff’s compensation rate was $85.00 per week (66% percent of $3.27 hourly wage X 40 hours per week). He was paid through October 20, 1976.
Judgment below is reversed and,
IT IS ORDERED that there be judgment herein in favor of plaintiff, Mose Latin, and against defendant, The Hica Corporation, for permanent and total disability worker’s compensation benefits, not to exceed the statutory maximum for each week of disability from October 20, 1976, with legal interest on all weekly benefits which are past due from the date each respective weekly benefit became due, together with all costs of these proceedings.
REVERSED and RENDERED.