395 So.2d 690 (1981)
Mose LATTIN
v.
The HICA CORPORATION.
No. 80-C-1574.
Supreme Court of Louisiana.
March 2, 1981.
*691 Blanchard, Walker, O'Quin & Roberts, Jerald L. Perlman, Shreveport, for defendant-applicant.
George T. Anderson, Shreveport, for plaintiff-respondent.
MARCUS, Justice.
Plaintiff, Mose Lattin, suffered an injury to his right foot as a result of an accident arising out of and in the course of his employment as a general maintenance helper with Hica Corporation. He was paid disability benefits for fifty-four weeks until his doctor released him to return to work. Plaintiff contended that he was unable to perform his employment duties without pain and instituted this action against Hica for workmen's compensation benefits alleging permanent and total disability. He also sought penalties and attorney's fees.
The trial judge, finding that plaintiff had not established his claim of "pain and disability" and had already been paid all sums to which he was entitled under the compensation law, rendered judgment in favor of defendant and against plaintiff, dismissing plaintiff's suit at his cost. The court of appeal reversed, finding that the totality of the evidence, lay and medical, preponderated in favor of a conclusion that the pain suffered by plaintiff was disabling. The court held that plaintiff, a common laborer, was totally and permanently disabled because his "injury substantially decreased his ability to compete with able-bodied workers in the flexible general labor market."[1] Considering that the court of appeal may have applied the law and jurisprudence as it existed prior to the amendment to La.R.S. 23:1221 by Acts 1975, No. 583, § 9, eff. Sept. 1, 1975, we granted defendant's application for certiorari to review the correctness of that decision.[2]
*692 The record reflects that plaintiff, Mose Lattin, a twenty-eight-year-old high school graduate, was employed as a general maintenance worker with Hica Corporation. While at work on October 6, 1975, he slipped and caught his foot in the turning parts of a Wheelabarator, a machine used to abrade and clean steel. Flesh and skin were torn from the top of his foot leaving bone and tendons exposed. Additionally, nerves and extensor tendons to some of his toes were severed. He was hospitalized that day and on October 24, 1975, a skin graft was applied to the injured foot. He was released from the hospital on November 25, 1975, but returned on January 26, 1976 for surgery to remove three neuromas from the nerves on the top of his foot and to insert these nerves into adjacent veins. Plaintiff continued to see his doctor for treatment. On October 20, 1976, his treating physician advised defendant that it would be safe for plaintiff to return to work wearing a special soft safety shoe. Compensation payments were stopped. When plaintiff refused to return to work due to pain throughout the top of his foot, Hica terminated his employment.
When this case came to trial in June of 1979, plaintiff still was not working. He testified that the pain in his foot becomes sharper upon exertion, standing for 15 to 20 minutes or walking short distances. In 1977, he worked for two days painting homes and laying rugs but quit because he experienced pain and swelling around his toes. Friends and relatives of plaintiff testified that he was an active person and a good worker before his accident but after his injury he became inactive and constantly complained about pain and throbbing in his foot.
The medical reports of Dr. W. W. Fox, the orthopedic surgeon who treated plaintiff and performed the initial surgery, were introduced in evidence in lieu of his testimony. These reports indicate that plaintiff complained of pain in his foot and Dr. Fox was of the opinion that the pain was due to nerve injury. Nonetheless, on October 20, 1976, Dr. Fox addressed a letter to defendant stating that since it was his understanding that defendant had safety toe shoes that were as soft as Hush Puppies, he felt that "it would be safe for Mose Lattin to return to work wearing some type of shoe." On November 22, 1976, Dr. Fox estimated that plaintiff had thirty percent partial permanent disability of his right foot or twenty percent partial permanent disability of the right lower extremity. One year later, he noted that plaintiff still complained of pain in his foot and had tenderness over the scar but believed the foot looked good and confirmed his earlier findings regarding plaintiff's disability rating and work status.
The deposition of Dr. Baer I. Rambach, another orthopedist who examined plaintiff, was introduced in evidence at trial. He examined plaintiff on November 15, 1976 and twice in 1977. On all three occasions, plaintiff complained of pain in his right foot and that he could not wear his shoe without discomfort. Dr. Rambach believed that the pain was due to some residual hypersensitivity in the skin graft on his foot. He further stated that he gave plaintiff a disability rating of twenty-five percent of his right foot and that he would not be surprised if he still had a painful scar. Dr. Rambach was also of the opinion that Lattin could return to work provided he wore a Hush-Puppie-type shoe equipped with additional padding over the scar. He considered that this would help the tenderness and sensitivity caused by the scar.
The deposition of Dr. Lewell Butler, a plastic surgeon who treated plaintiff several times between October 15, 1975 and November 17, 1977 and performed the surgery on plaintiff's foot on January 26, 1976, was also introduced in evidence at trial. He stated that plaintiff complained of pain during these visits but that he had observed plaintiff walk without a limp and put a shoe on his injured foot without any apparent discomfort. He further stated that it was possible there was no organic basis for his pain but admitted that it was likewise possible there could be some residual sensitivity over the course of the veins in his foot due to nerves growing up into the *693 veins. He was also of the opinion that plaintiff could return to his job if he wore a special safety shoe.
Dr. William Osborne, a specialist in the treatment of pain, testified regarding his treatment of plaintiff. His examination of plaintiff's foot revealed a hypersensitivity to touch and a difference in the skin temperature from the right foot and the left foot indicating a decrease in blood flow in the injured foot. Plaintiff was diagnosed to have a mild or moderate reflex dystrophy complicated by rather severe anxiety. Dr. Osborne was of the opinion that plaintiff's anxiety was due to his personality rather than his injury but did believe that his anxiety was real and not feigned. He believed that plaintiff had an injury and had pain but that he overreacted to it and was not motivated to engage in physical therapy necessary to improve his condition. He further stated that had plaintiff returned to work, he would have been in pain but that such activity would have been beneficial to his recovery. Although he believed plaintiff exaggerated his condition, he did not believe plaintiff was a malingerer.
In order to recover benefits under the Louisiana Workmen's Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. Disability is compensable only if it results from a work-related accident. La.R.S. 23:1031; Simpson v. S. S. Kresge Co., 389 So.2d 65 (La.1980). It was stipulated that plaintiff's injury was work-related. Hence, the sole issue presented for our review is whether the court of appeal erred in finding that plaintiff was totally and permanently disabled.
La.R.S. 23:1221 (Temporary, permanent, or partial disability; schedule of payments) was amended by Acts 1975, No. 583, § 9, eff. Sept. 1, 1975. The accident in the instant case occurred on October 6, 1975. Hence, our determination of the extent of disability must be governed by the new amendment and recent decisions of this court interpreting same, particularly those cases involving disability caused by substantial pain.
A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980). Substantial pain cases may also be analyzed within the framework of the odd lot doctrine which was adopted by this court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). See Wilson v. Ebasco Services, Inc., supra; Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Dusang v. Henry C. Beck Builders, Inc., supra.
Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.
The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes *694 his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., supra.
In the instant case, plaintiff testified that the pain in his foot increases upon exertion, standing for short periods of time or walking short distances. Although compensation payments were terminated in October 1976, he had only worked for two days since his injury due to the pain. His friends and relatives testified that he was an active person and a good worker before the accident but after his injury he became inactive and constantly complained about pain and throbbing in his foot. Although all four doctors believed that plaintiff could return to work provided he wore a special Hush-Puppie-type safety shoe, they all found objective medical findings to support his claim of pain. One orthopedist gave plaintiff a disability rating of thirty percent of his right foot or twenty percent of his right lower extremity, and the other gave him a disability rating of twenty-five percent of his right foot. The pain specialist diagnosed plaintiff to have a mild to moderate reflex dystrophy complicated by rather severe anxiety. Although he believed plaintiff overreacted to his pain and was not motivated to engage in the physical therapy necessary to improve his condition, he did not feel that plaintiff was a malingerer.
We consider the evidence clearly establishes a prima facie case for classification in the odd lot category, as plaintiff's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market. However, under the odd lot doctrine standards adopted by this court in Oster and Calogero, defendant should be given the opportunity to reduce the award of plaintiff's benefits from permanent and total disability to permanent and partial disability by presenting evidence that some form of gainful occupation is regularly and continuously available to plaintiff within a reasonable proximity to his residence. Accordingly, the judgment of the court of appeal awarding compensation benefits for permanent and total disability must be set aside and the case remanded to the district court to allow both parties to present additional evidence in light of the newly-adopted standards.

DECREE
For the reasons assigned, the judgment of the court of appeal is set aside and the case is remanded to the district court for further proceedings consistent with this opinion.
DENNIS, J., concurs with reasons.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
I disagree that plaintiff established a prima facie case of entitlement to odd lot status.
Every doctor opined that plaintiff could return to work, attributing sensitivity from scarring as the cause of the pain which would lessen with activity as the scarring became more flexible. Plaintiff was simply not motivated to undertake the activity necessary to lessen the pain. He has not proved the physical disability or lack of mental capacity and education to qualify for odd lot status.
DENNIS, Justice, concurring.
I join in the majority opinion and advance these additional reasons for remanding the case.
The odd lot doctrine as applied to substantial pain cases was adopted after the trial and appeal of this case. It is therefore understandable that such factors as the injured worker's education, mental abilities, work experience and vocational training *695 were not developed at trial sufficiently to allow us to avoid remanding. Although a remand is not always necessary, see Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La. 1980), there is some reason to believe that this plaintiff could engage in gainful employment if available though perhaps dissimilar in nature from plaintiff's former job. As in Turner v. American Mut. Ins. Co., 390 So.2d 1330 (La.1980), upon remand the trial judge must determine whether the employer is successful in rebutting the plaintiff's prima facie showing of odd lot status, and if so, whether permanent, partial disability benefits should be awarded.
NOTES
[1] 384 So.2d 479 (La.App. 2d Cir. 1980).
[2] 393 So.2d 104 (La.1980).