470 So.2d 538 (1985)
Mark Anthony RODNEY
v.
CROWN-ZELLERBACH CORPORATION.
No. CA 84 0538.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*540 Walton J. Barnes, Baton Rouge, for plaintiff.
William A. Norfolk, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment under the Worker's Compensation Statute awarding plaintiff-appellant, Mark Anthony Rodney, permanent partial disability and denying his claim for statutory penalties and attorney's fees against his employer, Crown-Zellerbach Corporation. The plaintiff sought permanent total disability benefits following an injury to his back on June *541 3, 1978, while he was attempting to replace a chain on one of the defendant's machines.
Plaintiff, a 26-year old male with a high school education, one and one-half years of college and training as an instrument technician, was working for the defendant as a laborer at the time of the incident. There were no eye witnesses to the accident. Plaintiff promptly reported the back injury to the defendant and was referred to physicians who diagnosed the problem as cervical and lumbar strain. He continued to work until he was hospitalized for traction September 21, 1978. He received compensation for his injury from the time of hospitalization until January 12, 1979, when his physician released him to return to work without restriction. He worked intermittently, with constant complaint of back and neck pain, until August 6, 1980.
A discogram made at Tulane Medical Center on August 14, 1980, revealed an abnormal cervical disc at the C6-7 level, and the plaintiff underwent a cervical fusion at Charity Hospital on March 14, 1981. Because of persistent complaints of significant pain, plaintiff underwent an additional discogram in June of 1982, which revealed another abnormal disc. At the time of trial of the instant case, the physician's report noted that the pending cervical surgery had to be postponed because of the trial. After hearing the evidence at trial on October 19, 1982, the court took the matter under advisement[1] and did not render a decision until November 3, 1983, at which time the court held that the plaintiff had proved permanent partial disability rather than permanent total disability. Pursuant to motions, the court amended the per weekly amount of the judgment but did not change the disability determination with a judgment filed on January 7, 1984.[2] We disagree and reverse in part.

MEDICAL HISTORY
The plaintiff allegedly injured his back while attempting by himself to replace a chain which had slipped off of defendant's grinder. While using a hook to replace the chain, the chain slipped off the hook and the plaintiff fell backwards, striking his lower back on a beam. He immediately crawled from under the machine and reported the injury to his supervisor and to the company nurse. The defendant sent the plaintiff to Dr. Alfred R. Gould, a general practitioner, on June 8, 1978. Dr. Gould had x-rays taken, diagnosed the problem as cervical and lumbar strain, prescribed medication and heat lamp treatment, and stated that he did not foresee any permanent disability.
Because of plaintiff's continued complaints of severe neck and back pains, the defendant referred the plaintiff to Dr. Samuel C. Irwin, an orthopedic surgeon, on June 12, 1978, who examined him both physically and with x-rays. Dr. Irwin found a contusion on the plaintiff's lower back which was healing well. He diagnosed cervical and lumbar strain also, and put the plaintiff on light work duty. After the plaintiff's third visit, Dr. Irwin's report of August 2, 1978, stated that the plaintiff continued to have low back pain but that there were no "objective signs of lumbar spine pathology." On August 28, 1978, Dr. Irwin released the plaintiff for full work duty. On September 21, 1978, because of plaintiff's severe neck and back pain, Dr. Irwin admitted the plaintiff to Our Lady of the Lake Medical Center for cervical and lumbar traction and physical therapy. On this date, the defendant also started paying compensation benefits. The plaintiff was discharged from the hospital on September 29, 1978.
*542 Plaintiff's complaints of pain continued, and the defendant referred the plaintiff to Dr. Brian H. Huncke, an orthopedic surgeon with Ochsner Clinic, on November 17, 1978. Dr. Huncke physically examined the patient, reviewed the prior x-rays and diagnosed "chronic pain syndrome." The doctor ran EMG and other screening laboratory tests, all of which were normal. Dr. Huncke refused to restrict the patient or to assign any disability rating. The plaintiff last visited Dr. Huncke on January 2, 1979, and the doctor's final report indicated that the total disability ceased January 2, 1979, and the partial disability ceased January 9, 1979.
The defendant ceased compensation payments on January 12, 1979, and the plaintiff returned to work. The plaintiff subsequently suffered a toe injury in the latter part of January 1979, which necessitated surgery, and he received worker's compensation benefits for this injury for a period of time.
In March of 1979, the plaintiff contacted Dr. William L. Meuleman, an orthopedic surgeon, because of continued back and neck pain. Dr. Meuleman performed a lumbar myelogram, but did not perform a cervical myelogram. The results of the test were normal; however, after the plaintiff's visit in May of 1979, the doctor suggested in a letter to Dr. Irwin that the plaintiff should be treated by cervical traction coupled with transcutaneous stimulation because of his persistent complaints of pain. No action was ever taken on Dr. Meuleman's suggestion.
On July 6, 1979, the plaintiff, at his own expense, saw Dr. Thomas Whitecloud, another orthopedic surgeon, because of headaches and severe neck pain which radiated into his shoulders and arms. Dr. Whitecloud examined the plaintiff physically and determined that the plaintiff had evidence of cervical disc injury. He recommended a cervical myelogram and cervical discogram. According to testimony, the tests were not performed until August of 1980 because of plaintiff's inability to pay. Dr. Whitecloud performed a cervical discogram at Tulane Medical Center on August 13, 1980, the results of which indicated an abnormal C6-7 disc. The plaintiff underwent an anterior cervical fusion at the C6-7 level on March 13, 1981. The surgery was performed by Dr. Bruce Razza, an orthopedic surgeon, at Charity Hospital in New Orleans.
In between the original examination by Dr. Whitecloud and the fusion performed by Dr. Razza, the plaintiff continued to work intermittently until August of 1980. On July 27, 1979, the plaintiff suffered a work related injury to his left knee when he slipped and fell.[3] Dr. John Fraser, an orthopedic surgeon, told the plaintiff he could continue working and treated the plaintiff conservatively from the date of the injury until October 5, 1979, when the doctor performed an arthroscopy and discovered a fat pad entrapment. On that same day, Dr. Fraser operated on the plaintiff's knee and removed the fat pad. On November 9, 1979, Dr. Fraser told the plaintiff he could return to light work in one month, and he released the plaintiff to return to regular duty on January 21, 1980, based on the knee injury. On February 12, 1980, Dr. Fraser placed the plaintiff in a knee brace and told him to return to work February 18, 1980, with no restrictions. Dr. Fraser testified in his deposition that the excision of the fat pad did not constitute something that would be permanently disabling. He stated that plaintiff had a 15 to 20 percent disability of the knee related to a prior meniscectomy and that "zero percent of that was related to the fat pad impingement which I treated him for."
Following the March 13, 1981, cervical fusion, the plaintiff continued to return to Dr. Razza, complaining of constant pain. In his deposition of February 1982, Dr. *543 Razza stated that the fusion of two vertebrae normally results in a seven to ten percent physical disability with no functional disability, and that the plaintiff's post operative recovery was normal. He also stated that because of plaintiff's continued complaints he had ordered additional EMG and nerve conduction studies and also a computerized axial tomography (CAT scan) on the plaintiff's lumbar and cervical spines, the results of which were within normal limits, although he did note some bulging of the discs at the L2-3 and L3-4 levels. Dr. Razza related that the plaintiff "probably has some chronic aching in the muscle", even though there were no objective findings to substantiate a persistent type of debilitating pain, with the result being poor muscle tone and continual soreness. At the time of the February 25, 1982, deposition, Dr. Razza felt that with exercise therapy the plaintiff could eventually return to gainful employment. Subsequent lumbar and cervical myelograms were within normal limits.
However, because of the plaintiff's persistent complaints of low back and neck pain, Dr. Razza performed cervical and lumbar discography on June 29, 1982. The cervical discography showed a markedly abnormal C5-6 cervical disc and possible early degeneration of the C4-5 disc which Dr. Razza felt was related to the June 3, 1978, injury. The lumbar discography was essentially within normal limits. At the time of the discography, Dr. Razza estimated a permanent partial physical disability of approximately 20 percent, and noted the possibility of surgery if conservative therapy did not help. On September 7, 1982, Dr. Razza indicated that further conservative therapy was in order, but that the prognosis for spontaneous recovery without surgical intervention was guarded. In his report of September 21, 1982, he noted that the surgery had been scheduled but had to be postponed because of the trial in this case.

CAUSATION
The defendant contends that the plaintiff did not suffer a work related accident on June 3, 1978, which caused the injury. In a worker's compensation suit, the employee must establish the work accident by a preponderance of the evidence; the causal relationship may be inferred when there is proof of an accident and an ensuing disability without an intervening cause. In evaluating the evidence of an accident, the trial court should accept as true the uncontradicted testimony of the party, especially if there are no circumstances to cast suspicion on the reliability of the testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
In the instant case, the plaintiff's testimony that he fell on the job and hurt his back is uncontroverted. He reported the incident on the same day to his supervisor and to the company nurse, and he recounted the incident to the examining physicians in the same manner each time. As to the injury, Dr. Irwin's report shows the plaintiff suffered a contusion to his back. Prior to the accident, there is no indication that plaintiff suffered back trouble. Complaint of back pain has been continuous since the accident. Even though the plaintiff continued to work for the defendant, testimony of a co-worker, Joseph M. Batiste, indicated that the plaintiff had to be helped with his work because of his injury. Thus, the trial court's determination that the plaintiff suffered a work related injury is clearly correct.

DISABILITY
Plaintiff argues that the trial court erred in not finding him permanently and totally disabled pursuant to the odd lot doctrine.
A worker's compensation claimant is totally and permanently disabled if he is unable to engage in any gainful employment. LSA-R.S. 23:1221(2).[4] A claimant who is able to engage in some employment, *544 though not necessarily the type work that he was doing at the time of the accident, is considered only partially disabled. LSA-R.S. 23:1221(3).
Under the odd lot doctrine, a claimant is totally and permanently disabled if he can prove that, because of his physical injury and other factors such as mental capacity, education, training or age, he can perform only services which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). The odd lot doctrine has been extended to cases where the claimant can function only with substantial pain. Lattin v. Hica Corp., 395 So.2d 690 (La.1981). To qualify as substantial, the pain accompanying routine physical tasks or attempts to return to work must be serious, intense or severe. See Culp v. Belden Corp., 432 So.2d 847 (La. 1983). Since a worker who experiences substantial pain when performing routine tasks may find that employment opportunities are severely limited, he can fall within the ambit of the odd-lot concept and be awarded total disability, unless there is proof that jobs are realistically available to him. 395 So.2d at 693, 694.
The claimant must prove to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. To determine whether the claimant has met his burden, all of the medical and lay evidence must be examined. See Chiasson v. Lafourche Parish Council, 449 So.2d 110 (La.App. 1st Cir. 1984).
In the instant case, plaintiff's educational background and mental ability is such that he might not ordinarily qualify as an odd-lot worker. However, plaintiff testified that since his accident his back and neck have constantly hurt him. He testified that he continued to work for the defendant while in severe pain because he needed the money, and that he could not really perform adequately. He stated that he has been unable to work at all since August of 1980 because of severe back and neck pain. This testimony was corroborated by his wife who also testified that he could not do anything around the house, including play with his children. As noted above, one of the plaintiff's former co-workers confirmed that he had to help the plaintiff do his job because of the plaintiff's inability to work after the accident. One of the plaintiff's relatives stated that the plaintiff could no longer engage in sports or work around the house as he did before the accident. All of the medical reports indicate that the plaintiff continually complained of pain. Additionally, the record shows that the plaintiff's condition worsened with time. Whereas the original medical reports showed no objective support for the continued pain, by August of 1980, a cervical discogram showed the presence of an abnormal disc. The plaintiff at the time of trial had undergone one operation, and another operation was pending for a second and possibly third abnormal disc. A review of the record shows that plaintiff's allegation of continual substantial pain is uncontroverted, thus the plaintiff has met his burden of showing that he can not function in gainful employment without substantial pain.
Once the prima facie case has been made for classifying the worker under the odd-lot doctrine, then the defendant must show that some form of gainful employment is regularly available to the employee. 395 So.2d at 693. No showing was made by the defendant of any suitable employment.
On the record before us, plaintiff was permanently and totally disabled under the odd lot concept at the time of trial; thus, the trial judge's determination of partial disability is clearly wrong and must be reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The plaintiff is entitled to compensation under the terms of LSA R.S. 23:1221(2). If his condition is ameliorated by operations or therapy, and if he is able to find employment that does not aggravate his back, it would be appropriate for the defendant to seek modification *545 of the judgment under LSA-R.S. 23:1331.
Plaintiff also argues that the trial court erred in failing to award statutory penalties and reasonable attorney fees under LSA-R.S. 23:1201.2 for arbitrary and capricious termination of benefits. This statute is penal in nature and must be strictly construed. It should be used only in those instances in which the facts show no probable cause for non-payment. Robichaux v. Terrebonne Parish Sch. Bd., 426 So.2d 241 (La.App. 1st Cir.1983). An award of penalties and attorney fees is precluded when the employer asserts a good faith defense. 449 So.2d at 114.
In the instant case, the defendant's termination of compensation benefits was based on Dr. Huncke's final report which indicated that the plaintiff could return to work without restrictions, according to testimony by Mr. Doug Robson, an employee of the defendants.[5] Thus we agree with the trial court that the termination of compensation benefits was not arbitrary and capricious but was based on reliance on medical information and was done in good faith.
The record shows that subsequent medical exams between January 1979 and August 1980 failed to find objective proof of plaintiff's disability; thus, the defendant's reliance on the orthopedist's release for work continued to be in good faith. However, the discogram of August 14, 1980, showed objective evidence of an abnormal disc which the treating physician stated was caused by the June 3, 1978, injury. The defendant failed to pay medical expenses or to reinstate compensation benefits to the plaintiff, even after the plaintiff asked his attorney to recoup the medical bills and to write the defendant for reimbursement. The defendant's refusal to pay medical bills and to reinstate compensation benefits in light of objective proof of disability is arbitrary and capricious. Where the employer subsequently receives objective evidence indisputably showing a claimant to be disabled, the employer cannot rely on a prior medical report and on this basis avoid penalties and attorney fees for arbitrary failure to reinstate compensation benefits. See Alexander v. Department of Culture, Etc., 410 So.2d 1286 (La.App. 3rd Cir.1982). Thus, the defendant is subject to 12 percent penalties on worker's compensation benefits and medical expenses incurred by the plaintiff and to payment of reasonable attorney fees incurred by the plaintiff on or after the date the defendant received the results of plaintiff's discogram.
Plaintiff also alleges that the weekly compensation award should be increased from $130.00 per week to $140.45 per week. Plaintiff's contention is totally without merit. The compensation award is based on the wage at the time of the accident. The accident occurred June 3, 1978, and the weekly compensation due as of that date is $130.00. Plaintiff alleges that the date of injury to plaintiff's knee, July 27, 1979, should be used as a separate accident from which to compute the rate of compensation after that date. The record clearly shows that plaintiff suffered no disability at all as a result of the injury to his knee on July 27, 1979.
For the foregoing reasons, we reverse the judgment of the trial court and find total and permanent disability. We also allow plaintiff's claim for statutory penalties and reasonable attorney fees after the defendant received notification of the results of plaintiff's discogram. In all other respects the judgment of the trial court is affirmed. We remand to the trial court to determine the date from which the statutory penalties and attorney's fees are to be awarded, and the amount of the attorney's fee. Costs of this appeal are to be borne by the defendant.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] The transcript of the trial indicates that a determination would be made as to the necessity of additional testimony from Dr. Razza, the physician whose report said a second operation was necessary. No additional testimony or deposition was ever entered into evidence or made a part of the record.
[2] The judgment signed on November 3, 1983, indicated that reasons for judgment were assigned. The court minutes for December 7, 1983, indicated that reasons for judgment were assigned. The amended signed judgment filed on January 9, 1984, indicated that reasons for judgment were assigned. The record is devoid of any reasons for judgment.
[3] The plaintiff had previously been operated on in 1975 at which time another orthopedist, Dr. John Loupe, performed a medial meniscectomy on the plaintiff's left knee. The injury was the result of a work related accident on defendant's property, and a court settlement for this prior injury had already been rendered.
[4] Since the injury occurred before the 1983 amendment of the worker's compensation statute, references in this opinion apply to the statutes as they appeared prior to 1983 La. Acts No. 1 § 1.
[5] The record is devoid of proof that defendant seriously questioned the occurrence of a work related accident, at any time prior to appeal.