WARREN E. HOOD, Judge Pro Tern.
Plaintiff, Michael J. Simon, sued his former employer, United Service Contractors, Inc., (United), and its insurer, Western Preferred Casualty Company, for workmen’s compensation benefits. From a judgment awarding benefits for total and permanent disability, penalties and attorney’s fees, the defendants have appealed.
Plaintiff suffered an injury to his lower back on November 8, 1982, as the result of an accident arising out of and in the course and scope of his employment as operations manager with United. His average weekly wage at the time of the accident was stipulated to be $426.92. He was paid compensation for a period of forty-four (44) weeks from February 6, 1983, through December *29 10, 1983, at the rate of $204.00 per week. He returned to work December 9, 1983. His employment was subsequently terminated on March 9,1984, due to an economic downturn in United’s business.
The trial court determined that plaintiff fell into the odd lot category due to his inability to obtain work as a result of pain associated with his injury, and, therefore, found that he was totally and permanently disabled.
The trial judge further found that there was no medical evidence upon which the employer could reasonably have refused to reinstate compensation payments, after demand, and awarded plaintiff attorney’s fees of $3,000.00 and statutory penalties.
Defendants appealed, asserting three assignments of error:
1) The trial court committed manifest error in finding that the plaintiff was an odd lot worker and therefore was totally and permanently disabled.
2) The trial court committed manifest error in not finding the plaintiff physically capable of performing his former job duties.
3) The trial court committed manifest error in finding defendants were arbitrary and capricious in not reinstating compensation benefits to plaintiff.
The first two assignments of error will be combined for discussion.
At the time of the accident, R.S. 23:1221 read in part:
“Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
[[Image here]]
“(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two thirds per centum of wages during the period of such disability.
“(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond .a maximum of four hundred fifty weeks.”
The jurisprudence developed the “odd lot” doctrine. This doctrine is explained by our Supreme Court in Lattin v. Hica Corporation, 395 So.2d 690 (La.1981):
“Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training, age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the *30 employee within reasonable proximity to the employee’s residence.”
After the accident, plaintiff was first seen by Dr. Howard Alleman, who later referred him to Dr. Roland Miller, an orthopedic surgeon.
Dr. Miller made the determination that plaintiff’s accident resulted in two herniated discs. On February 6, 1983, he performed a laminectomy and a diskectomy at the L 4-5 level. Plaintiff was discharged from Abbeville General Hospital on February 13, 1983. Dr. Miller continued to see the plaintiff approximately once a month through August 3, 1983. On his next examination on December 7, 1983, he was discharged by Dr. Miller. The doctor assigned plaintiff a 25% disability of the whole body.
On December 9, 1983, plaintiff returned to work and continued to work until he was terminated on March 9, 1984. Although he did not go back to see Dr. Miller until after he was terminated, he continued to take medication for his pain while he was working.
At the time of his injury, plaintiff was employed as the operations manager for United. This was a managerial position in which he supervised 80-100 employees. Within the company structure, there were only three persons with a higher position than that of plaintiff’s.
Prior to the accident, plaintiff did in fact perform some manual labor. He testified that his position required 70% managerial work and 30% manual labor. In contrast to this testimony, the vice president of the company, Mark Lejeune, testified that plaintiff's position did not require him to personally perform manual labor.
From the time plaintiff returned to work on December 9, 1983, until he was terminated, he was neither required to nor did he do any manual labor.
The trial court made a finding of fact that plaintiff’s employment at the time of the accident required the physical labor he was then doing. We find no manifest error in this conclusion and in the conclusion that he is presently disabled from performing the same or similar duties in which he was engaged when injured. Therefore, we reject appellant’s second assignment of error.
We do find error, however, in the trial court’s finding that plaintiff falls into the odd lot category and is consequently totally and permanently disabled.
At the time of the accident, plaintiff was 29 years old and had obtained a high school education. His prior work experience included work in sales, work as a deck hand on a crew boat, and as an air conditioning installer.
Plaintiff admitted that in his application for unemployment compensation following the termination of his employment, he had certified that he could work in a sales position. He testified that he had filled out only two applications for jobs, one for a managerial position and the other for a sales position. Plaintiff testified that he certified on his application for unemployment compensation he would seek a job he could do, but that such a job does not exist. When asked if he felt he could do the work if he found such a job, his response is revealing.
“A. If that job can be found for me, yes, and if I can make — I stated on there my weekly salary, Four Hundred Fifty Dollars ($450.00) a week; if that job can be found, and I can make Four Hundred Fifty Dollars ($450.00) a week, yes.
“Q. Are you saying that before you can accept the job, it has to pay you over Four Hundred Dollars ($400.00) a week?
“A. They have to pay me to where I can make a reasonable income.
“Q. Which is—
“A. Close to what I was making before, to where my family can live on the same basis they were living in before I was injured.
“Q. What is your concept of reasonable income?
*31 “A. To where I can pay all my bills and still have some money left over to be able to enjoy myself and my family.
“Q. If you would quantify it, please? What amount?
“A. Basically, before [between] Four and Five Hundred Dollars a week. That will take care of all of my bills and have some money left over, I mean, for my family.”
Although he added that the job would have to be modified for him so that he would not have to stand or walk for a long period of time, it was apparent that his failure to find employment was due more to his salary requirements than to his physical condition.
Additionally, Dr. Miller testified that although plaintiff may not be suited to do manual labor, an office job would be appropriate for him.
The criteria set forth in Lattin for establishment of a prima facie case for classification in the odd lot category have not been met. It has not been shown that his physical condition, mental capacity, education, training, age or other factors combine to place him at a substantial disadvantage in the competitive labor market. In fact, the medical evidence is to the effect that he can do office work. His position as operations manager at the time of the accident shows that he is otherwise capable of performing office work. He has not shown that he has made a bona fide attempt to seek a job for which he is physically and mentally capable of performing, even though the wages might be less than those he was earning previously.
Since he has failed to make out a prima facie case for classification in the odd lot category, the burden did not shift to his employer to show that some form of gainful occupation is regularly and continuously available to the claimant within reasonable proximity to the claimant’s residence.
He is not disabled from engaging in any gainful occupation for wages.
Although not presently totally disabled, plaintiff has met the burden of proving that he is partially disabled within the meaning of R.S. 23:1221(3). We find that he suffered temporary total disability from February 6, 1983, until December 10, 1983, and partial disability since that date.
Appellants complain of the award of statutory penalties and attorney’s fees.
The report of Dr. Miller, dated December 7, 1983, to the employer, states that plaintiff has a 25% partial disability of the whole body. He stated that the rating is based on the persistence of the patient’s back pain and his inability to do any type of work requiring any stress to his back.
In his report of March 21, 1984, to the employer, Dr. Miller reiterated this conclusion. He stated in the report that he had recommended to Simon that possibly he be channeled into another job line that would not be as physically demanding. Plaintiff’s superiors were aware of the fact that he was taking medication for pain during the period of time he worked after he returned on December 9, 1983. They were aware of the fact that he had performed manual labor prior to the date of the accident, and they were aware of the fact that he could not perform manual labor after he returned to work. They told him to take it easy and not do any manual work.
A representative of the insurance company had called plaintiff on March 7, 1984. Plaintiff told him that he had made an appointment with Dr. Miller, that the pain was severe, and that he could not talk with him about anything until he had talked to the doctor. Two days later, plaintiff’s employment was terminated. The defendants presented no evidence to explain their failure to reinstate compensation payments after demand.
Under these circumstances, we cannot say that the trial court’s finding that the defendants were arbitrary in their refusal to reinstate compensation payments after demand was clearly wrong.
The judgment of the trial court is amended, and it is now ordered, adjudged and *32 decreed that there be judgment in favor of the plaintiff and against the defendants, condemming defendants to pay unto plaintiff the following:
1) Compensation payments beginning December 10, 1983, calculated at sixty-six and two-thirds per centum of the difference between the wages plaintiff was earning at the time of injury ($426.92), with the maximum weekly compensation rate being $204.00, and any lesser wages which plaintiff has actually earned or may hereafter earn in any week since December 10, 1983, during the period of his partial disability, but not beyond a maximum of 450 weeks, with legal interest on each past due payment from due date until paid, subject to such credits as the defendants are entitled to under the provisions of LSA-R.S. 23:1221(3);
2) Statutory penalties in the amount of twelve per cent (12%) on all past due amounts under item (1) and attorney’s fees in the amount of $3,000.00.
All costs of this proceeding in the trial court are assessed against appellants. The costs of this appeal are assessed one-half to appellants and one-half to appellee.
AFFIRMED AS AMENDED.