YELVERTON, Judge.
Charles Layssard sued his employer, Procter and Gamble Manufacturing Company, under the Workmen’s Compensation Act seeking benefits for total and permanent disability, together with statutory penalties and attorney’s fees. From a judgment finding plaintiff presently working in substantial pain and partially disabled, both the defendant and the plaintiff have appealed. We affirm.
The only issue raised by defendant on appeal is whether the trial court erred in finding the plaintiff suffered from substantial pain as a result of the injury. The only issue raised by plaintiff’s brief is the finding of partial disability. The plaintiff argues that he is totally and permanently disabled. We will address these two issues.
The suit arose when plaintiff, a maintenance technician, sustained a twisting injury to his left knee as a result of an accident on May 31, 1983. He was on a ladder changing a piece of machinery when his body twisted resulting in an injury to his left knee. Plaintiff reported the accident to his employer. On the next day plaintiff saw Dr. Brown, the company physician. Dr. Brown referred him to Dr. Douglas Gamburg, an orthopedic surgeon. Dr. Gamburg’s initial diagnosis was- a tear of the medial meniscus, with some slight degenerative changes. On June 16, 1983, plaintiff underwent an orthoscopic examination. The examination revealed a longitudinal tear of the medial meniscus. Dr. Gamburg then performed a partial menis-cectomy. The hospital orthoscopic examination records revealed the plaintiff had chondromalacia, a degenerative change in the medial femoral condyle. Plaintiff was hospitalized for four days.
Dr. Gamburg saw plaintiff several times on a follow-up basis after plaintiff left the hospital, noting that plaintiff complained of pain in his left knee during these visits. The doctor stated that plaintiff had arthritis in his left knee probably due to a combination of his age and the accident. Dr. Gamburg opined that plaintiff suffered a five to ten percent impairment of his leg as a result of the accident.
*1174 Plaintiff was later referred to Dr. John Weiss. His opinion was a 10 to 15 percent impairment to the physical function of his left knee.
Plaintiff was paid workmen’s compensation for 12 weeks commencing June 18, 1983. Disability benefits were terminated on September 17, 1983. On September 26, 1983, plaintiff resumed working full-time for his employer performing the same duties. Plaintiff worked steadily at Procter and Gamble as a maintenance technician through the time of trial.
Because plaintiffs accident occurred on May 31, 1983, the question of his entitlement to compensation benefits arises under former La.R.S. 23:1221.
The trial court held that although plaintiff proved he worked in substantial pain after the accident, he failed to prove that he was totally disabled. Accordingly, the trial court found plaintiff partially disabled under former La.R.S. 23:1221(3) and awarded partial disability benefits for a total of 425 weeks. (We note here that the statute provides benefits for a period of 450 weeks under former La.R.S. 23:1221, and we will hereinafter amend the judgment accordingly.) The trial court also denied plaintiffs claim for statutory penalties and attorney’s fees. The plaintiff has not appealed this part of the judgment.
The employer argues that the trial court erred in finding that the plaintiff works in substantial pain. We find no error in this determination.
As this court stated in Knight v. Cotton Bros. Baking Co., Inc., 473 So.2d 105 (La.App. 3rd Cir.1985):
Whether a claimant’s pain is substantial enough to be disabling is a question of fact that must be determined according to the circumstances of each individual case. Furthermore, this factual conclusion regarding a claimant’s degree of pain is a factual one entitled to great weight and will not be disturbed on appeal unless it is clearly wrong. Newell v. U.S. Fidelity and Guaranty Co., 368 So.2d 1158 (La.App. 3rd Cir.1979); McBroom v. Argonaut Insurance Co., 370 So.2d 212 (La.App. 3rd Cir.1979); Augustine v. Courtney Const. Co., Etc. [405 So.2d 579], supra.
In the present case the plaintiff testified that he was a maintenance technician, or high speed machine adjuster, for Procter and Gamble for the previous 16 years. Plaintiff was 50 years old. His job required stooping, bending, climbing, a lot of walking, and welding. Before his accident he was able to perform his duties without substantial pain to his left knee. Since the accident his duties involving stooping, climbing and bending caused pain to his knee. His duties remained the same after the accident. He stated that he had pain every day but excessive activities, such as stooping, crawling, lifting weight and standing, caused “real severe horrible pain.” He had problems sleeping at night due to cramping. He could no longer do the same duties at work without experiencing pain. In the latter part of 1984 he had to turn down overtime work for that reason.
His wife, Maidie Layssard, testified corroborating his testimony that he has been in pain since the accident and had had problems sleeping. She also stated that before the accident he had no complaints of pain.
Lewis Slider, an automotive mechanic, testified that he served in the National Guard with the plaintiff in the summer of 1983, and that the plaintiff complained of pain in his knee and of not being able to bend. He once saw the plaintiff grab his knee in pain.
James Carter, a friend of the plaintiff, stated that plaintiff had a limp after the accident and that his knee bothered him when he went up steps.
Walter Thompson, an employee of Procter and Gamble, testified that plaintiff’s duties require him to climb, stoop and squat. After the injury he observed plaintiff having difficulty with his duties. He saw plaintiff limping on occasions and plaintiff complained of pain. The last time *1175 plaintiff complained of pain was within three months of trial.
Sandra Setliff, plaintiffs stepdaughter, observed plaintiff in pain and having problems bending his knee. Plaintiff had difficulty with his knee ever since the accident.
William Nugent and Robert Rachal also testified that plaintiff complained of pain in his knee on several occasions.
Gerald Lemoince, plaintiff’s supervisor at work, testified that plaintiff’s knee gave out on him three times on his first day back to work following surgery. However, after plaintiff returned to full duty he did not complain of pain or an inability to do certain jobs.
Dr. William Brown, a specialist in family practice and the company physician for Procter and Gamble, made arrangements for plaintiff to see Dr. John Weiss after he was discharged by Dr. Gamburg. On October 19, 1983, Dr. Brown re-examined plaintiff’s left knee. There was no swelling. There was tenderness medially at the knee joint and slight laxity medially. Dr. Brown did not feel his findings fit the symptoms of pain complained of by plaintiff. However, he did state that if plaintiff suffered from chondromalacia this could account for his continued complaints of pain. He stated that a person with chondromalacia would suffer pain after an eight hour work day consisting of climbing, bending, walking and squatting.
Dr. Gamburg testified by deposition that during the orthoscopic examination plaintiff was noted to have chondromalacia or some degenerative change in the medial femoral condyle. He stated that this was probably related to his torn meniscus. This finding also appeared in the medical records of the hospital. The plaintiff had a slow recovery due to his age and the arthritis in his knee. On subsequent visits plaintiff continued to complain of pain in his left knee. In the latter part of his deposition Dr. Gamburg contradicted his earlier testimony and the hospital records by stating that he found no signs of chondromalacia during the orthoscopic examination. We cannot account for this apparent contradiction in Dr. Gamburg’s deposition. He did state that chondromalacia is difficult to treat and that the condition may provoke symptoms of pain. The condition may be aggravated by climbing, stooping, walking or bending. He stated that chondromalacia can follow surgery or synovitis, an inflammation inside the knee joint.
Dr. John Weiss' testified that he performed an orthogram on August 11, 1983. His impression was that plaintiff was suffering from synovial irritation. On the November 17, 1983, examination, he found evidence of patella grating. Dr. Weiss had talked with Dr. Gamburg who stated he found some patella femoral chondromalacia during the orthoscopic examination. Upon these findings Dr. Weiss suspected that plaintiff might have patella femoral chon-dromalacia, which is a degeneration of the smooth articular joint cartilage. Pain would be compatible with chondromalacia, which can cause severe pain. However, this doctor felt that if plaintiff had chon-dromalacia it was mild, not severe. A patient suffering from chondromalacia can get pain with increased stress on the joint. Mild chondromalacia does not necessarily cause much pain. Dr. Weiss believed plaintiff had a low pain threshold.
Based on the lay testimony as well as the medical testimony and the medical records, we find that the trial court was not clearly wrong in finding the plaintiff was in substantial pain while working as a maintenance technician. Although the testimony of Dr. Gamburg was contradictory at times, the medical evidence as a whole supports a finding that plaintiff is suffering from chondromalacia. While his condition is not severe, the condition can be painful with increased stress on the joint. Plaintiff also has a low pain threshold.
When the factual issue is the severity of pain suffered by the claimant, the trial court’s conclusions must be based on its evaluations of the claimant’s testimony since in the final analysis, the plaintiff is the only one capable of describing his pain. See Smith v. Union Underwear, Inc., 457 *1176 So.2d 248 (La.App. 3rd Cir.1984). In the present case the trial court accepted the testimony of the plaintiff that his pain at times was quite severe. We find no error in this evaluation of credibility and determination.
The plaintiff on appeal argues that the trial court should have determined that he was totally and permanently disabled, instead of partially disabled.
In Kirkley v. DSI Transports, Inc., 416 So.2d 584 (La.App. 1st Cir.1982) the court was confronted with a similar factual situation. In that case plaintiff sustained an injury to his left leg and filed suit for workmen’s compensation benefits. The plaintiff was a truck driver and returned to his former occupation as a truck driver with DSI approximately one and a half years after the accident. The evidence proved that his resumption of duties caused severe pain in his left ankle. The trial court held that plaintiff proved he worked in substantial pain and that plaintiff made out a prima facie case that because of plaintiffs age (57 at the time of trial), education, training, experience, and disability, a reasonable job market did not exist for plaintiff’s services. Therefore, the trial court found plaintiff totally and permanently disabled. The employer appealed arguing the trial court erred in its determination of total and permanent disability.
The appellate court in addressing whether plaintiff met his burden in proving his claim of total permanent disability stated the law then applicable as follows:
[1] La.R.S. 23:1221 states in part that an employee is totally disabled when he cannot "... engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience....” Thus, a totally disabled person is one who cannot engage in any gainful occupation for wages.
However, the Supreme Court has held that an employee need not be utterly helpless in order that he be adjudged totally and permanently disabled. In Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), the Supreme Court adopted the “odd-lot” doctrine of permanent total disability. In Oster, the court formulated the following test:
“In order to determine whether the plaintiff fits within this category of odd lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he ‘cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.’ If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with ‘a gainful occupation.’ It is fairer to place the burden on the defendant to show that there are steady jobs available to the plaintiff, after plaintiff has shown his odd-lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation.” (Citations omitted.) 390 So.2d at 1323-1324.
The Supreme Court in Lattin v. Hica Corporation, 395 So.2d 690 (La. 1981), subsequently stated that “substantial pain” claims of total permanent disability should also be determined within the *1177 larger framework of the “odd-lot” doctrine. The court stated:
“The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant’s pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him.” 395 So.2d 693-694.
The court in the Kirkley case found that although plaintiff showed that he was working in his former occupation in substantial pain after the accident, he did not meet his burden of proving his odd-lot status. The court found that the only evidence in the record in this regard was that plaintiff was 57 years old at the time of trial, had a high school diploma, and that he had always worked as a truck driver, except for two brief periods. The court stated that “[t]his showing alone does not suffice to prove ‘odd-lot’ status, because this particular offering ... does not sufficiently indicate that plaintiff’s services are so limited in quality, quantity, or dependability that there is no reasonable job market in which plaintiff can compete.” The court also found that since the testimony indicated that plaintiff’s pain had not created any substantial problems in his present employment, that plaintiff had not proven that his pain or infirmities had rendered him an undesirable employee in his present job. For these reasons the court found the plaintiff to be partially disabled under La.R.S. 23:1221(3).
In the present case the trial court apparently concluded that plaintiff did not meet his burden of proving his odd-lot status. The evidence in the record indicates that plaintiff was 50 years old and had a high school education. He also had one year of college and two years in electronics trade school. Before working for defendant he worked as a driver, a machinist, and a member of the Air Force. Plaintiff testified that he was able to perform his job duties with defendant as well after the accident as before, but that excessive activities such as stooping, standing, crawling and lifting objects caused him severe pain. His supervisor testified that plaintiff’s job required minimal climbing, lifting weights, squatting, and climbing, and that plaintiff had been able to perform these duties without the aid of other employees.
Under these facts we find that the trial court did not err in finding that plaintiff did not meet his burden of proving odd-lot status. As in Kirkley, the plaintiff’s evidence failed to show that plaintiff’s services were so limited in quality, quantity, or dependability that there was no reasonable job market in which plaintiff could compete, and the evidence failed to show that his pain or infirmities had rendered him an undesirable employee in his present job.
For these reasons the judgment of the trial court is affirmed at Procter and Gamble’s cost. The judgment is amended to provide workmen’s compensation benefits for 450 weeks as provided in former La. R.S. 23:1221(3), subject to a credit for weekly benefits already paid.
AMENDED, AND AS AMENDED, AFFIRMED.